**EXXON PIPELINE COMPANY,**
Petitioner,

v.

**Daniel R. ZWAHR and Sandra
K. Zwahr, Respondents.**

No. 01–0168.

Supreme Court of Texas.

Argued Jan. 30, 2002.

Decided May 23, 2002.

Rehearing Overruled June 27, 2002.

Joy M. Soloway, Stephen K. Carroll, Julie Tellepsen, Fulbright & Jaworski, Houston, Joseph Patterson, Patterson & Edquist, Angleton, for petitioner.

Richard L. McElya, Angleton, William D. Noel, Houston, for respondent.

Justice HANKINSON delivered the opinion of the Court.

In this case, we determine whether an appraisal expert's opinion regarding the value of land taken by eminent domain satisfies the requirements for admitting expert testimony under the Texas Rules of Evidence. Exxon Pipeline Company condemned a 50–foot–wide pipeline easement on Daniel and Sandra Zwahrs' 49–acre tract of land. The parties disputed Exxon's right to condemn the land, and following the grant of summary judgments confirming that right, tried the case on the value of the land taken. At trial, Exxon objected to the testimony of the Zwahrs' expert, arguing that he impermissibly relied on project enhancement to calculate the land's value and that he improperly determined the property's highest and best use. The trial court admitted the testimony over Exxon's objections, and after receiving the jury's verdict, rendered judgment for the Zwahrs. Exxon argued a number of points on appeal, including that the trial court erred by admitting the testimony of the Zwahrs' expert. The court of appeals concluded that the trial court properly admitted the testimony, but reduced the amount awarded in the judgment on other grounds. 35 S.W.3d 705. We conclude that the Zwahrs' expert impermissibly relied on project enhancement and the trial court therefore abused its discretion in admitting that expert testimony. Because this error is harmful, we reverse the court of appeals' judgment and remand this cause to the trial court for further proceedings.

In 1989, the Zwahrs purchased a 49–acre tract of land in Fort Bend County for $44,408.43, about $900 per acre, and used the land for cotton farming. At that time, the property's northeast corner was encumbered by a 50–foot–wide pipeline easement that contained an underground natu-

ral-gas pipeline owned by United Gas Pipeline Company. United transferred the easement to Koch Gateway Pipeline Company in 1993. The Koch easement does not affect cotton farming on the property's surface.

In 1995, Exxon petitioned the Fort Bend County Court at Law to condemn a 50–foot–wide strip on the Zwahrs' property for an ethane pipeline. *See* TEX. NAT. RES. CODE § 111.019; TEX. PROP.CODE § 21.012. The land Exxon sought to condemn has a total surface acreage of 1.01 acre and lies parallel to the existing Koch easement for much of its route, overlapping the Koch easement by approximately 82%. As the parties could not agree on the condemned land's value, court-appointed special commissioners conducted a hearing to determine its fair-market value. *See* TEX. PROP. CODE §§ 21.014–.015. The commissioners awarded the Zwahrs $2,264.80. The Zwahrs objected to the award and requested a jury trial before the county court. *See id.* § 21.018. Exxon deposited the full amount in the court registry, and took possession of the easement on October 6, 1995. *See id.* § 21.021. Exxon then buried an 8⅝–inch diameter pipeline underneath the 49–acre tract, parallel to and approximately twenty-five feet from the Koch pipeline. Like the Koch easement, the Exxon easement does not affect the Zwahrs' continued use of the surface for farming cotton.

Following the grant of summary judgments confirming Exxon's right to condemn the Zwahrs' land, the case proceeded to trial de novo on the amount due the Zwahrs for the easement taking. The primary controversy concerned the highest and best use of the condemned property. The Zwahrs' expert, Brad Kangieser, maintained that the 1.01–acre easement was a self-contained, separate economic unit, which had a value independent from

that of the surface acreage, with a highest and best use as a pipeline easement. Exxon presented two experts who testified that the land's highest and best use was as farmland or rural-residential land and that the 1.01–acre easement was not a separate economic unit.

After valuing the 49–acre tract as a whole, Exxon's experts estimated the market value of the 1.01–acre easement as either $1,727 or $707. Exxon's experts did not provide a separate value for the right to assign the easement because they determined that this right was already included in the easement's fair-market value. The Zwahrs' expert estimated the value of the land taken as $36,077, which included $26,398 for the easement itself and $9,679 for the right to assign the easement. Each expert reduced his estimate by a percentage allocable to the Zwahrs' retained use of the land's surface for farming cotton.

The jury awarded the Zwahrs $30,000 as the fair-market value of the easement and $10,000 as the fair-market value of Exxon's right to assign the easement. Kangieser's testimony is the only testimony that tends to support this verdict. After deducting the $2264.80 Exxon had previously deposited into the court registry, the trial court rendered judgment awarding the Zwahrs $37,735.20.

Exxon appealed, arguing that the trial court erred by: (1) admitting Kangieser's testimony on the value of the land; (2) charging the jury with a question requiring two separate damages findings instead of one broad-form question; (3) improperly instructing the jury on the correct measure of damages; and (4) denying Exxon's post-verdict challenges to the legal and factual sufficiency of the evidence. The court of appeals, with one justice dissenting, concluded that the trial court improperly submitted a separate damages ques-

tion on the right to assign the easement. 35 S.W.3d at 713. Accordingly, the court of appeals reduced the trial court's judgment by the $10,000 amount awarded for the assignment right and remanded to the trial court to recalculate interest and render judgment in accord with its opinion. *Id.* at 716.

In all other respects, however, the court of appeals affirmed the trial court's judgment, concluding that the trial court did not abuse its discretion in admitting Kangieser's testimony or in refusing to include Exxon's requested instruction on damages, and that there was legally and factually sufficient evidence to uphold the jury's verdict. *Id.* In determining that the trial court did not abuse its discretion in admitting Kangieser's testimony, the court of appeals reasoned that the evidence supported his testimony that the property's highest and best use was as a pipeline easement. *Id.* at 710–11. The court also concluded that his highest-and-best-use opinion was based on the existing Koch easement and was, therefore, neither speculative nor predicated on impermissible project enhancement. *Id.* at 711–12.

On petition for review, Exxon argues that the trial court improperly admitted Kangieser's testimony concerning the value to the Zwahrs of the land taken by Exxon and that the trial court erred by refusing Exxon's proposed jury instruction on damages.[1] Because we conclude that the trial court improperly admitted Kangieser's testimony, we need not reach the jury-instruction issue.

■ We begin by reviewing the standard for valuing a pipeline easement in a condemnation proceeding. Compensation for land taken by eminent domain is measured by the fair-market value of the land at the time of the taking. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 183 (Tex.2001); *Heddin v. Delhi Gas Pipeline Co.,* 522 S.W.2d 886, 888 (Tex. 1975); *Fuller v. State,* 461 S.W.2d 595, 598 (Tex.1970). The general rule for determining fair-market value is the before-and-after rule, which requires measuring the difference in the value of the land immediately before and immediately after the taking. *Callejo v. Brazos Elec. Power Coop., Inc.,* 755 S.W.2d 73, 76 (Tex.1988); *City of Pearland v. Alexander,* 483 S.W.2d 244, 247 (Tex.1972). When, as here, only part of the land is taken for an easement, a partial taking occurs. *Westgate, Ltd. v. State,* 843 S.W.2d 448, 456 (Tex.1992). In this situation, the before-and-after rule still applies, but compensation is measured by the market value of the part taken plus any diminution in value to the remainder of the land. *Id.; State v. Meyer,* 403 S.W.2d 366, 371 (Tex.1966); *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 812 (1954). Because the Zwahrs do not allege any damage to the remainder of their 49–acre tract as a result of the Exxon easement, only the market value of the 1.01–acre taken is at issue in this case.

■ In determining market value, the project-enhancement rule provides that the factfinder may not consider any enhancement to the value of the landowner's property that results from the taking itself. *City of Fort Worth v. Corbin,* 504

1. We received amicus briefs supporting the petitioner from: Entergy Gulf States, Inc., The Lower Colorado River Authority, Marathon Ashland Pipe Line, LLC, and Marathon Ashland Petroleum, LLC, Reliant Energy, Inc., TE Products Pipeline Co., LP, and WesT-Tex 66 Pipeline Co. We received amicus briefs supporting the respondents from: International Paper Co. and Temple–Inland Forest Products Corp. The Independent Cattlemen's Association of Texas and the Texas Forestry Association joined the amicus brief filed by International Paper Co. and Temple–Inland Forest Products Corp.

S.W.2d 828, 830 (Tex.1974); *Fuller*, 461 S.W.2d at 598. This is because the objective of the judicial process in the condemnation context is to make the landowner whole. *See* Tex. Const. art. 1, § 17 (guaranteeing adequate compensation to landowners whose property is condemned); *Corbin*, 504 S.W.2d at 831. To compensate a landowner for value attributable to the condemnation project itself, however, would place the landowner in a better position than he would have enjoyed had there been no condemnation. *Corbin*, 504 S.W.2d at 831. The project-enhancement rule is subject to narrow exceptions that do not apply here. *See Fuller*, 461 S.W.2d at 598.

On the other hand, the factfinder may consider the highest and best use to which the land taken can be adapted. *Bauer v. Lavaca–Navidad River Auth.*, 704 S.W.2d 107, 109 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The existing use of the land, in this case, cotton farming, is its presumed highest and best use, but the landowner can rebut this presumption by showing a reasonable probability that when the taking occurred, the property was adaptable and needed or would likely be needed in the near future for another use. *See United States v. 8.41 Acres of Land*, 680 F.2d 388, 394 (5th Cir.1982); *McAshan v. Delhi Gas Pipeline Corp.*, 739 S.W.2d 130, 131 (Tex.App.—San Antonio 1987, no writ).

Finally, Texas law permits landowners to introduce testimony that the condemned land is a self-sufficient separate economic unit, independent from the remainder of the parent tract with a different highest and best use and different value from the remaining land. *See State v. Windham*, 837 S.W.2d 73, 76 (Tex.1992); *Bauer*, 704 S.W.2d at 109. In this situation, the market value of the severed land can be determined without reference to the remaining land. *See Windham*, 837 S.W.2d at 76; *Bauer*, 704 S.W.2d at 109. But when the portion of the land taken by eminent domain cannot be considered as a separate economic unit, the before-and-after method requires determining market value by evaluating the taken land as a proportionate part of the remaining land. *See Windham*, 837 S.W.2d at 76.

Exxon contends that under this well-established law, the trial court erred in admitting Kangieser's opinion for two reasons. First, Exxon contends that Kangieser impermissibly included project enhancement in his valuation by relying on Exxon's condemnation itself to compute the easement's fair-market value. Specifically, Exxon argues that Kangieser used Exxon's pipeline easement in concluding that a separate economic unit for pipeline easements exists on the Zwahrs' farm and in assigning a value to that economic unit. Second, Exxon contends that Kangieser's conclusion that the property's highest and best use was for a pipeline easement is flawed because it ignored controlling case law. The Zwahrs respond that Kangieser did not rely on the Exxon project in valuing the easement as a separate economic unit, but rather, reached his conclusion using the existing Koch easement. The Zwahrs also argue that applying the factors for determining highest and best use shows that the 1.01 acre taken by Exxon had a highest and best use as a pipeline easement. We agree with Exxon that the trial court erred in admitting Kangieser's testimony because he impermissibly relied on project enhancement in valuing the land taken.

For an expert's testimony to be admissible under Texas Rule of Evidence 702, the expert must be qualified, and the expert's opinion must be relevant to the issues in the case and based upon a reliable foundation. Tex.R. Evid. 702; *Gam-*

*mill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex.1998); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995). Exxon does not challenge Kangieser's qualifications. Accordingly, we must determine whether his testimony is relevant and reliable. *See Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 808 (applying relevance and reliability standard to determine admissibility of expert's opinion on condemned land's value); *Sharboneau*, 48 S.W.3d at 186 (same).

▬▬▬ The relevance requirement, which incorporates traditional relevancy analysis under Texas Rules of Evidence 401 and 402, is met if the expert testimony is " 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.' " *Robinson*, 923 S.W.2d at 556 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985)). Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as rules 401 and 402. *Robinson*, 923 S.W.2d at 556.

▬▬▬ In contrast, Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. *Id.* at 557. Under this requirement, expert testimony is unreliable if it is not grounded " 'in the methods and procedures of science' " and is no more than " 'subjective belief or unsupported speculation.' " *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. *Gammill*, 972 S.W.2d at 727. In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Id.* at 728.

▬▬▬ Although the trial court serves as an evidentiary gatekeeper by screening out irrelevant and unreliable expert evidence, it has broad discretion to determine the admissibility of evidence. *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 590 (Tex.1999); *Robinson*, 923 S.W.2d at 558. Accordingly, we review the trial court's decision to admit Kangieser's testimony for abuse of discretion. *See Gammill*, 972 S.W.2d at 727; *Robinson*, 923 S.W.2d at 558. Kangieser began his valuation by determining the highest and best use of the Zwahrs' property. Rather than appraise the 49–acre tract as a whole, he determined that the 1.01–acre easement taken by Exxon was a separate economic unit from the rest of the land with a value independent from that of the surface acreage. Based on that conclusion, he determined that the 1.01 acre had a highest and best use as a pipeline easement. In reaching his highest-and-best-use conclusion, he relied, in part, on the existence of the Koch pipeline, which he believed created a probability that another pipeline would come in on or adjacent to that pipeline. He then researched the market for prices at which pipeline easements have sold, and based on those sales, estimated the value of the 1.01–acre tract as $36,077.

Kangieser's testimony as a whole reveals that he premised his valuation on the fact of Exxon's condemnation, thus improperly including project enhancement in that valuation. *See Corbin*, 504 S.W.2d at 830–31; *Fuller*, 461 S.W.2d at 598. First, he testified that the 1.01–acre easement Exxon acquired is a separate economic unit, thereby demonstrating that Exxon's condemnation itself defined the parameters of the economic unit. Kangieser repeatedly acknowledged this fact during voir-dire examination. For example, he

stated that Exxon's condemnation "created the economic unit," and that the 1.01 acre did not exist until after the condemnation. This testimony distinguishes this case from *Bauer v. Lavaca–Navidad River Authority*, in which the court of appeals concluded that testimony establishing a separate economic unit was admissible when the separate unit existed before the condemnation project at issue and had defined parameters different from, and not because of, the condemnation project itself. *See* 704 S.W.2d at 109.

The Zwahrs argue that Kangieser based his highest-and-best-use opinion on the fact of the existing Koch easement, not the Exxon project. It is true that in reaching his highest-and-best-use conclusion, Kangieser took into account that the existing pipeline increased the likelihood of another pipeline being installed in that area. But his reliance on the existing pipeline does not negate the fact that Exxon's condemnation itself created the economic unit he used for determining highest and best use. *See 8.41 Acres*, 680 F.2d at 393–94 (concluding that condemned easements could not be severed from parent tract as separate economic units that were part of a pipeline corridor, in part because landowners' witnesses had not established defined parameters within which each condemned tract was located). Furthermore, Kangieser testified that in addition to relying on the Koch easement, he depended upon the fact that Exxon condemned a pipeline easement on the property to determine its highest and best use.

Not only did Kangieser rely on the Exxon project to establish a separate economic unit, he relied on Exxon's condemnation to assign a value to the condemned land. *See Fuller*, 461 S.W.2d at 598 (concluding that trial court improperly admitted valuation testimony that attributed value to condemned land based on the existence of a highway frontage that was the condemnation project itself). As noted above, the Exxon easement overlapped the existing Koch easement by 82%, or approximately .82 acres. Kangieser testified that before Exxon's project, the Zwahrs' interest in the .82 acres burdened by the Koch easement was of "negligible" or "nominal" value because it was an exclusive easement owned by Koch. He then testified that once Exxon received Koch's consent to lay another pipeline within the easement, the value of the .82–acres increased to $35,720 per acre, making the 1.01–acre Exxon easement worth $36,077. *But see Corbin*, 504 S.W.2d at 831 (explaining that once "the condemnor manifests a definite purpose to take a particular land," market value may not include any enhancement due to the project itself). He further explained that when Exxon actually condemned the property, the value of that land fell to zero, and thus the value to the Zwahrs of the land taken was $36,077. In other words, had the Exxon project never come along, the .82 acres would have continued to have no value to the Zwahrs. Kangieser provided no explanation, other than the Exxon project itself, to explain the increase in the value of the .82–acre covering the Koch easement from zero to $35,720 an acre. Moreover, he admitted twice that the value he placed on the land did not exist before Exxon's condemnation.

Because Kangieser relied on Exxon's condemnation in establishing a separate economic unit and in assigning a value to that unit, his final opinion reflected enhancement in the land's value that occurred only because of the Exxon project itself. As explained earlier, value that exists because of the condemnation project is not, under the project-enhancement rule, value for which a landowner may recover. *See Corbin*, 504 S.W.2d at 830; *Fuller*, 461 S.W.2d at 598. In addition, after Kangieser identified the 1.01–acre tract as a sepa-

rate economic unit, he evaluated it without reference to the Zwahrs' entire 49–acre tract. Thus at best, Kangieser determined the value of the easement to Exxon, not the value of the loss to the Zwahrs for the taking of the easement. *But see Texas Elec. Serv. Co. v. Graves,* 488 S.W.2d 135, 138 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.) ("Value to the taker is not the proper guide."). Kangieser failed to apply the before-and-after valuation method, which would have required him to evaluate the 1.01–acre as a proportionate part of the entire forty-nine acres. *See Windham,* 837 S.W.2d at 76; *8.41 Acres,* 680 F.2d at 394. For these reasons, Kangieser's testimony was irrelevant to determining the value of the land taken from the Zwahrs and therefore inadmissible under Texas Rule of Evidence 702. *See Sharboneau,* 48 S.W.3d at 183; *Robinson,* 923 S.W.2d at 556. Accordingly, the trial court abused its discretion in admitting it. Because this error is harmful, *see* Tex.R.App. P. 61.1(a), we reverse the court of appeals' judgment and remand this cause to the trial court for further proceedings.

Justice O'NEILL and Justice RODRIGUEZ did not participate in the decision.