NO. 07-02-0278-CV


 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MARCH 31, 2003



______________________________




RODNEY COUCH, INDIVIDUALLY AND AS


NEXT FRIEND FOR TESSA COUCH, APPELLANT


 

V.



JOHN PAUL SIMMONS, M.D. AND COVENANT MEDICAL GROUP, APPELLEES




_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-512,394; HONORABLE SAM MEDINA, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

OPINION


 Rodney Couch, individually and as next friend of Tessa Couch, a minor, and Kathy
Adams, intervenor, appeal from a take-nothing summary judgment in their medical
malpractice suit against John Paul Simmons, M.D. and Covenant Medical Group. We
affirm.


BACKGROUND

 Rodney Couch, individually and as next friend of Tessa Couch, a minor, filed suit
against defendants John Paul Simmons, M.D. and Covenant Medical Group alleging that
Simmons was negligent in his treatment of Tessa. Covenant Medical Group was alleged
to have been the employer of Simmons, and was sued on the basis of respondeat
superior. References to Simmons will encompass Covenant unless noted otherwise. 
Rodney is Tessa's father. Kathy Adams, Tessa's mother, intervened. For convenience,
references to Rodney will be intended to include Kathy unless specifically noted otherwise. 

 On January 19, 2000, Tessa was undergoing physical therapy following surgery on
her right knee. She developed a headache, weakness, confusion, tingling of her right arm
and leg, and began vomiting. She was taken to the emergency room of Covenant Medical
Center, where she was seen by Dr. Kowaleski, the emergency room physician. Dr.
Kowaleski ordered tests, requested consultation by Dr. Simmons, a neurologist, and
admitted Tessa to the hospital in the care of Dr. Simmons. Kowaleski's orders included
neurological examinations every four hours. Simmons assumed Tessa's care and first saw
her shortly after 7:00 p.m. on the evening of January 19th. 

 At 7:30 a.m. on the morning of January 20th, Tessa was found to have weakness
in her right leg; she was unable to squeeze her right hand; and she would not respond
verbally. Simmons was notified and ordered an EEG. The test findings were abnormal. 
Simmons ordered Tessa transferred to the pediatric intensive care unit. He examined her
shortly after noon. He then ordered administration of fluids intravenously and further
studies. The studies indicated that Tessa had suffered an ischemic stroke of the brain. (1) 

 Suit was filed alleging that Dr. Simmons was negligent in his treatment of Tessa. 
The negligence allegations were supported by testimony from Robert Snodgrass, M.D., a
professor of pediatric neurology. As relevant to this appeal, Snodgrass opined that
Simmons failed to meet the appropriate standard of care by failing to timely administer
intravenous fluids to Tessa, and that if IV fluids had been timely administered the chances
were "9 out of 10" that Tessa would have had either no stroke or a lesser stroke with a
smaller amount of brain injury from the stroke. In his deposition, Snodgrass expressed his
opinion that Tessa's stroke was a progressive stroke which began during her physical
therapy session, before she sought treatment at the emergency room or was attended by
Simmons. 

 Citing E.I du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995)
and its progeny, Simmons moved to strike the testimony of Snodgrass, plaintiffs' sole
expert, as to the causal relationship between Simmons' alleged failure to timely administer
IV fluids and the effects of Tessa's stroke. Simmons also filed an original, then an
amended, no-evidence motion for summary judgment. The motion for summary judgment
hinged in part on the trial court's ruling as to Snodgrass' testimony. Because Snodgrass
was Rodney's only expert witness, if Snodgrass' testimony as to causation was stricken,
Rodney had no evidence to prove Simmons' alleged negligence was a proximate cause
of the effects of Tessa's stroke and the damages sought. 

 The trial court granted Simmons' motion to strike, granted his motion for summary
judgment and rendered a take-nothing judgment. 

 Rodney presents four issues by which he urges that the trial court abused its
discretion: (1) in applying the Robinson test to Snodgrass' testimony instead of what he
refers to as an "analytical gap" test enunciated in Gammill v. Jack Williams Chevrolet, Inc.,
972 S.W.2d 713, 726-27 (Tex. 1998); (2) in finding that Snodgrass' testimony did not meet
the Robinson test for reliability; (3) by allowing Simmons to file a motion for summary
judgment after the scheduling order's deadline for filing dispositive motions; and (4) by
refusing to grant Rodney an opportunity to obtain another expert witness. We will address
the issues in the order presented. 

ISSUES 1 & 2: RELIABILITY OF 

DR. SNODGRASS' CAUSATION TESTIMONY 

 For an expert's testimony to be admissible under Texas Rule of Evidence 702, the
expert must be qualified, and the expert's opinion must be relevant to the issues in the
case and based upon a reliable foundation. See Tex. R. Evid. 702; Exxon Pipeline Co.
v. Zwahr, 88 S.W.3d 623, 628-29 (Tex. 2002); Gammill, 972 S.W.2d at 720; Robinson,
923 S.W.2d at 556. As pertinent to this appeal, (2) Simmons challenged the reliability of
Snodgrass' testimony as to a causal relationship between the alleged breach of the
appropriate standard of care by Simmons and the damage to Tessa from the stroke. Thus,
we consider only the reliability requirements of Rule 702. See Zwahr, 88 S.W.3d at 629.
The burden of showing the reliability of Snodgrass' testimony is on Rodney. See
Robinson, 923 S.W.2d at 556. 

 Rule 702's reliability requirement focuses on the principles, research, and
methodology underlying an expert's conclusions. See Zwahr, 88 SW.3d at 629; Robinson,
923 S.W.2d at 557. Under such requirement, expert testimony is unreliable if it is not
grounded in the methods and procedures of science and is no more than subjective belief
or unsupported speculation. See Zwahr, 88 S.W.3d at 629. In applying this reliability
standard, the trial court determines whether the analysis used to reach the opinions in
question is reliable. See id; Gammill, 972 S.W.2d at 728. Expert testimony is also
unreliable if there is too great an analytical gap between the data the expert relies upon
and the opinion offered. See Zwahr, 88 S.W.3d at 629; Gammill, 972 S.W.2d at 727. 

 We review the trial court's decision to admit or exclude the testimony and opinions
in question using the abuse of discretion standard. See Zwahr, 88 S.W.3d at 629. Thus,
we review the trial court's decision to exclude Dr. Snodgrass' testimony to determine if
some evidence supports the decision, see Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.
1998), and to determine whether the trial court acted without reference to any guiding rules
and principles. See Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126
(1939). 

 The validity of the causation question as to IV fluid administration is directly
addressed in an affidavit from Snodgrass which was submitted by Rodney in opposition
to Simmons' motion to strike and motion for summary judgment. First, Snodgrass noted
that "The theory is that normalization of plasma volume by vigorous IV hydration improves
stroke outcome." He also stated "This concept has not been directly tested. Physicians
are unwilling to deprive patients of IV fluids, as would be needed in the control group." Yet,
he proceeded to note that "The theory has been subject to peer review and publication." 
He referenced several peer review articles and attached some of those articles. 

 In attacking Snodgrass' testimony, Simmons points out that several of the articles
do not directly address the causal relationship between failure to administer IV fluids and
effects of the stroke. Simmons cites two of the peer review articles which address the
question and which conclude, in part, that (1) administration of fluids affects blood flow and
hemodynamics to the brain, but (2) no specific beneficial relationship has been established
between administration of IV fluids and stroke outcome. Simmons further maintains that
Snodgrass has not established sufficient personal experience in the effects of delayed IV
fluid administration to render his opinion reliable under Gammill. 

 The peer review articles in question were before the trial court, along with a
deposition from Snodgrass and his affidavit. The trial court could have determined that the
peer review articles did not support Snodgrass' causation testimony. Also, Snodgrass'
affidavit and deposition testimony would support a conclusion by the trial court that
Snodgrass did not evidence sufficient prior personal experience with, or study of the results
of, failing to timely administer IV fluids to teenagers suffering strokes. (3) The trial court also
could have considered the reliability of the causation opinions in light of Snodgrass' (1)
testimony that the theory had not been directly tested; (2) conclusion that with timely
administration of IV fluids Tessa probably would have had either no stroke or a lesser
stroke with a smaller amount of brain injury; (3) failure to specify which outcome was more
likely (no stroke or a lesser stroke); and (4) testimony that he could not specify how much
less the injury would have been if the result of timely IV fluid administration had been a
lesser stroke instead of prevention of the stroke. 

 The evidence supported a conclusion by the trial court that the causal relationship
between the lack of what Snodgrass referred to as timely IV fluid administration and the
outcome of Tessa's stroke was a theory to which Snodgrass adhered, but which he had
not tested and on which he had insufficient personal experience to render his causation
testimony reliable. Assuming, arguendo, that Snodgrass' testimony should have been
considered under what Rodney refers to as the "analytical gap" methodology of Gammill,
the record affords support for the trial court's striking of the testimony. See Gammill, 972
S.W.2d at 724-25. 

 In reviewing the record under the guidance of Robinson and its six non-exclusive
factors, we note that Snodgrass' affidavit specifically addressed each of the six factors. 
Thus, the trial court had before it Snodgrass' attempt to validate the theory both as to
standard of care and as to causation. The affidavit stated that the theory had not been
directly tested to determine what resulted from the failure to timely administer IV fluids. 
However, two of the peer review articles before the court addressed studies of case
histories which contradicted Snodgrass' opinion that administration of IV fluids would have
caused a better result for Tessa. (4) 

 We cannot say that there was no evidence to support the trial court's conclusion that
Rodney did not prove the testimony to be reliable. Thus, the trial court did not abuse its
discretion in striking Snodgrass' causation testimony under the guiding principles of
Robinson. We overrule Rodney's first and second issues. 

ISSUE 3: LATE FILING OF MOTION 

FOR SUMMARY JUDGMENT

 Rodney's third issue urges that the trial court abused its discretion in allowing
Simmons to file a motion for summary judgment after the date set by a prior scheduling
order for filing dispositive motions. Rodney also complains that under this record
Simmons' motion to strike was a dispositive motion and that the trial court abused its
discretion in allowing that motion to be filed late. 

 The trial court signed a scheduling order dated March 9, 2001. The order directed
that all motions which, if granted by the court, would dispose of part or all of the case, be
filed by January 11, 2002. The order also provided that the dates set in the scheduling
order could not be changed without the court's approval. 

 On February 22, 2002, Simmons filed a motion for summary judgment combined
with objections to the expert opinions of Dr. Snodgrass on causation and a motion to strike
the opinions. On February 25, 2002, the trial court signed an amendment to its scheduling
order and changed the trial setting from March 29, 2002, to June 3, 2002. On February
25th, Rodney filed a motion to strike Simmons' motion to strike Snodgrass' testimony and
for summary judgment because it was untimely filed. Various pleadings and motions were
filed and orders entered thereafter, culminating with an order signed on May 31st granting
Simmons' motion to strike and motion for summary judgment. Rodney filed an objection
to the trial court's action. The trial court heard Rodney's objection on June 7th. As a result
of the June 7th hearing, the trial court signed an order dated June 17th which (1) set aside
the May 31st order, (2) extended the deadline for filing dispositive motions, (3) denied
Rodney's motion to strike Simmons' motion for summary judgment and Snodgrass'
testimony, (4) granted Simmons' motion to strike, and (5) granted Simmons' motion for
summary judgment. 

 The parties agree that we review the trial court's action for abuse of discretion. Both
parties cite Clanton v. Clark, 639 S.W.2d 929 (Tex. 1982) for the proposition that the trial
court has wide discretion to manage its docket. Beyond citing Clanton, however, Rodney
does not call our attention to any authority supporting his request that we interfere with the
trial court's management of its docket. More specifically, he does not cite authority which
(1) allows us to set aside the trial court's order granting an extension of time for Simmons
to file the motions in question, or (2) prevents the trial court from changing the date for
filing dispositive motions, which seemingly is contemplated by the scheduling order itself
which states that the dates cannot be changed "without the court's approval." 

 Failure to either cite authority, explain why no authority is cited, or advance
substantive analysis waives the issue on appeal. See Tex. R. App. P. 38.1(h); Moser v.
Davis, 79 S.W.3d 162, 169, 170 (Tex.App.--Amarillo 2002, no pet.); In re Williams, 998
S.W.2d 724, 730 (Tex.App.--Amarillo 1999, no pet.).

 Rodney does not explain why he cites no authority for his issue other than authority
for the standard of review. We consider citation to a single case for the standard for review
to be insufficient citation of authority to comply with the mandate of Tex. R. App. P. 38.1(h)
and the authorities cited above. We overrule issue three. 

ISSUE 4: FAILURE TO GRANT TIME FOR 

RODNEY TO OBTAIN ANOTHER EXPERT

 By his fourth issue Rodney complains that the trial court should have granted him
time to obtain another expert after Simmons' motion to strike Dr. Snodgrass' causation
testimony was granted. He poses no standard of review for us to use and cites no
authority either for a standard of review or for his substantive assertion of error. Nor does
he claim that he requested a continuance or in any other manner advised the trial court of
its alleged error. 

 To preserve a complaint for appellate review, a party must present to the trial court
a timely request, motion, or objection, state the specific grounds therefor, and obtain a
ruling. See Tex. R. App. P. 33.1; Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex.
1999). In re C.O.S., 988 S.W.2d 760, 764-65 (Tex. 1999); General Chem. Corp. v. De La
Lastra, 852 S.W.2d 916, 920-21 (Tex. 1993). Rodney did not do so. Moreover, failure to
cite authority or explain the absence of such citation waives the issue on appeal. See Tex.
R. App. P. 38.1(h); Moser, 79 S.W.3d at 169, 170. We overrule issue four. 

CONCLUSION

 Having overruled Rodney's four issues, we affirm the judgment of the trial court.


 Phil Johnson

 Chief Justice
1. An ischemic stroke occurs when tissue is damaged because of lack of sufficient
blood flow to the tissue. The disruption of blood flow can result from one or more of
several causes, including a clot in the blood vessel or narrowing of the vessel due to
disease or spasm. 
2. Simmons maintains that he contests other allegations made against him, such as
the allegation that he breached the standard of care. Because of the posture of the appeal
before us, the only issue we address is Snodgrass' testimony as to causation. We express
no opinion on any other issue.
3. The peer review articles referenced by Snodgrass indicate that stroke rates,
recommended treatment modalities and results vary with age and other factors. 
4. At oral submission Rodney's counsel stated that the claim being made was that
timely administration of IV fluids would have resulted in a better result for Tessa, not that
her stroke would have been prevented.