Opinion issued December 18, 2003








     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00548-CV




WESTTEX 66 PIPELINE CO., Appellant

V.

DONNIE BULANEK, JACKO GARRETT, AND NANCY GARRETT,
Appellees





On Appeal from County Court at Law No. 2 and Probate Court 
Brazoria County, Texas
Trial Court Cause No. 24,302G 




MEMORANDUM OPINION

          In this eminent domain case, WesTTex 66 Pipeline Company (WesTTex)
acquired a 50-foot wide, permanent pipeline easement across the property of
appellees, Donnie Bulanek, Jacko Garrett, and Nancy Garrett (“the Landowners”). 
The only issue tried to the jury was the value of the Landowners’ property acquired
by WesTTex. We determine whether the trial court abused its discretion in admitting
the opinion testimony of the Landowners’ two real estate appraisal experts, Brad
Kangieser and Tom Edmonds, who, over the objections of WesTTex, opined
regarding the value of the easement rights acquired WesTTex. We also determine
whether the trial court erred in denying WesTTex’s motion for judgment
notwithstanding the verdict (“JNOV”).
          We reverse and remand.
Standards for Valuing a Pipeline Easement in a Condemnation Proceeding
          In determining whether the trial court erred in admitting Kangieser’s and
Edmonds’s testimony, we are guided by our holding and reasoning in WesTTex v.
Baltzell, No. 01-01-00826-CV (Tex. App.—Houston [1st Dist.] July 17, 2003, pet.
filed) (corrected memorandum opinion). As here, the admissibility of Kangieser’s
and Edmonds’s testimony was at issue in Baltzell. We held that the opinion
testimony of Kangieser and Edmonds was irrelevant to determining the value of the
property taken by WesTTex in that case and was thus inadmissible under Texas Rule
of Evidence 702.


 Id. at 16. In reaching our holding, we applied the standards
articulated by the Texas Supreme Court in Exxon Pipeline Company v. Zwahr, 88
S.W.3d 623 (Tex. 2002). 
          Also at issue in Zwahr was the admissibility of the testimony of the
landowners’ expert Brad Kangieser.


 Restating the well-established legal principles
applicable to valuing a pipeline easement in a condemnation proceeding, the Zwahr
court stated as follows: 
Compensation for land taken by eminent domain is measured by the
fair-market value of the land at the time of the taking. The general rule
for determining fair-market value is the before-and-after rule, which
requires measuring the difference in the value of the land immediately
before and immediately after the taking. When, as here, only part of the
land is taken for an easement, a partial taking occurs. In this situation,
the before-and-after rule still applies, but compensation is measured by
the market value of the part taken plus any diminution in value to the
remainder of the land. 
 
In determining market value, the project-enhancement rule
provides that the factfinder may not consider any enhancement to the
value of the landowner’s property that results from the taking itself. 
This is because the objective of the judicial process in the condemnation
context is to make the landowner whole. To compensate a landowner
for value attributable to the condemnation project itself, however, would
place the landowner in a better position than he would have enjoyed had
there been no condemnation. . . .
 
On the other hand, the factfinder may consider the highest and
best use to which the land taken can be adapted. The existing use of the
land . . . is its presumed highest and best use, but the landowner can
rebut this presumption by showing a reasonable probability that when
the taking occurred, the property was adaptable and needed or would
likely be needed in the near future for another use. 
 
Finally, Texas law permits landowners to introduce testimony that
the condemned land is a self-sufficient separate economic unit,
independent from the remainder of the parent tract with a different
highest and best use and different value from the remaining land. In this
situation, the market value of the severed land can be determined
without reference to the remaining land. But when the portion of the
land taken by eminent domain cannot be considered as a separate
economic unit, the before-and-after method requires determining market
value by evaluating the taken land as a proportionate part of the
remaining land. 

Id. at 627-28 (internal citations omitted).
          Applying these legal principles, the Zwahr court concluded that Kangieser’s
testimony was irrelevant, and therefore inadmissible, to determining the value of the
easement taking; thus, the trial court had abused its discretion in admitting
Kangieser’s testimony. Id. at 631. The Zwahr court provided two reasons for its
holding: (1) in violation of the project-enhancement rule, Kangieser had
impermissibly relied on Exxon’s condemnation to establish a separate economic unit
and to assign a value to the property and (2) Kangieser failed to utilize the “before-and-after” method in valuing the easement. Id. at 630-31. Of particular relevance to
the Zwahr court was Kangieser’s testimony that Exxon’s condemnation defined the
parameters of the economic unit. Id. at 629. Kangieser had testified that Exxon’s
taking created a separate economic unit that had a highest and best use as a pipeline
easement. Id. at 626, 629. 
          In Baltzell, we noted that Kangieser and Edmonds also improperly relied on
WesTTex’s condemnation to define the parameters of the economic unit. Baltzell,
01-01-00826-CV, slip op. at 10. Both experts testified that the 5.47-acre easement
acquired by WesTTex in that case was a separate economic unit with a highest and
best use as a pipeline easement. Id. After examining the record, we determined that,
because Kangieser and Edmonds relied on WesTTex’s condemnation to establish a
separate economic unit and to assign a value to that unit, the experts’ final opinions
reflected enhancement in the condemned property’s value that occurred only because
of the WesTTex project. Id. at 15. “Value that exists because of the condemnation
project is not, under the project-enhancement rule, value for which a landowner may
recover.” Id. (citing Zwahr, 88 S.W.3d at 630). The record also revealed in Baltzell
that Kangieser and Edmonds failed to employ the before-and-after valuation method
to determine the value of the property condemned as mandated by the Zwahr court. 
Id. at 15, 16 n.8 (citing Zwahr, 88 S.W.3d at 627). 
          Because Kangieser’s and Edmonds’s opinions were premised on flawed
methodology, we concluded in Baltzell that each expert’s testimony was irrelevant
to determining the value of the subject taking and was therefore inadmissible. Id. at
16. Accordingly, we held that the trial court had abused its discretion in admitting
Kangieser’s and Edmonds’s testimony.


 Id.
Admissibilty of Kangieser’s and Edmonds’s Opinions in the Instant Case
          A.      WesTTex’s Challenges
          In issues one and two, WesTTex complains that the trial court erred in
admitting Kangieser’s and Edmonds’s testimony because the experts’ opinions were
based on improper valuation methodology.


 In support of these issues, WesTTex
raises the following points: (1) Kangieser and Edmonds failed to use the before-and-after approach to valuing the condemned property; (2) Kangieser and Edmonds
impermissibly included project enhancement in their valuations by relying on
WesTTex’s condemnation to compute the easement’s fair-market value; (3)
Kangieser’s and Edmonds’s opinions were premised on a flawed conclusion that the
3.915 acres subject to the easement comprised a separate economic unit with a
highest and best use as a pipeline easement; and (4) Kangieser’s and Edmonds’s
opinions as to the value of the right to assign the easement were unreliable. 
          B.      Kangieser’s and Edmonds’s Opinions
          Before trial, the parties stipulated that Kangieser and Edmonds each utilized
the same appraisal methodology as each had in Baltzell to arrive at his respective
opinion regarding the values of the easement rights being acquired.


 The parties’
stipulations amount to judicial admissions, which generally are conclusive on the
party making them. See Mendoza v. Fid. and Guar. Ins. Underwriters, Inc., 606
S.W.2d 692, 694 (Tex. 1980); Frazer v. Tex. Farm Bureau Mut. Ins. Co., 4 S.W.3d
819, 825 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Thus, the Landowners have
judicially admitted that Kangieser and Edmonds utilized the same valuation
methodologies in the underlying proceeding as each had in Baltzell. Such conclusion
is also supported by the record in this case. 
          As in Baltzell, Kangieser and Edmonds also improperly relied on WesTTex’s
condemnation to define the parameters of the economic unit. Kangieser and
Edmonds each testified that the 3.915 acres subject to the easement had a highest and
best use as a pipeline easement.


 Implicit in the experts’ testimony is that each expert
considered the 3.915 acres to be a separate economic unit. 
          In addition, Kangieser and Edmonds each testified that he had not used the
before-and-after valuation method in appraising the property acquired by WesTTex. 
Both experts appraised the 3.915-acre easement without reference to the parent tract
and provided a value for condemned property as it existed on July 24, 1998, the date
of the taking. Neither expert determined the value for the condemned property before
or after the taking or with reference to the entire parent tract as required by the
before-and-after valuation method. Rather, Kangieser and Edmonds used the “sales
comparison approach,” otherwise known as the “market approach,” in valuing the
condemned property. Utilizing such approach, Kangieser and Edmonds arrived at a
fair-market value for the condemned property by evaluating and comparing the sales
of pipeline easements similar to the WesTTex easement. 
          The Landowners assert that their experts’ valuation methodology was
appropriate under the facts of this case. They point out that Zwahr does not require
a before-and-after valuation of the entire property when landowners introduce
evidence that the condemned property is a self-sufficient economic unit, independent
from the remainder of the parent tract with a different highest and best use and
different value from the remaining land. Zwahr, 88 S.W.3d at 628. Under those
circumstances, the market value of the severed land can be determined without
reference to the remaining land. Id.
          The Landowners contend that the 3.915 acres subject to the easement was a
separate economic unit with a highest and best use as a pipeline easement because it
was an established “pipeline corridor.” For this reason, the Landowners assert that
their experts could assign the 3.915 acres a value independent of the parent tract. The
Landowners premise this argument on the fact that the pipeline easement obtained by
WesTTex contained four previously constructed pipelines. WesTTex laid its pipeline
at issue in this case completely within the four preexisting pipeline easements. The
strip of land containing the WesTTex pipeline, and the four preexisting pipelines, is
adjacent to three additional pipelines; thus, there were seven preexisting pipelines in
the vicinity where WesTTex laid its pipeline. The Landowners contend that the seven
preexisting pipelines constituted an established pipeline corridor, which comprised
a separate economic unit. However, neither Kangieser nor Edmonds opined that the
acreage subject to the seven preexisting pipelines was a separate economic unit. 
Instead, the experts testified that the 3.915 acres subject to the WesTTex easement,
which is only a portion of the claimed pipeline corridor, comprised a separate
economic unit. As such, Kangieser’s and Edmonds’s testimony in this respect does
not support the Landowners’ contention that it was proper to value the 3.915 as a
separate economic unit. To the contrary, the experts’ testimony on this point further
served to demonstrate that the experts impermissibly relied on the condemnation at
issue to establish a separate economic unit and to assign value to that unit. 



          In sum, the record reveals that, in valuing the property condemned by
WesTTex, Kangieser and Edmonds impermissibly considered the enhancement in the
property’s value that occurred only because of WesTTex’s project. Kangieser and
Edmonds improperly assessed the value of the easement to WesTTex, not the loss
suffered by the Landowners. See Zwahr, 88 S.W.3d at 631. Kangieser and Edmonds
also failed to employ the before-and-after valuation method, which, as stated in
Zwahr, is the appropriate method to apply in pipeline condemnation proceedings in
which the subject land is not a separate economic unit. Id. at 627. As we did in
Baltzell, we conclude that the testimony of Kangieser and Edmonds was irrelevant to
determining the value of property acquired by WesTTex and was therefore
inadmissible. Baltzell, 01-01-00826-CV, slip op. at p. 16. Accordingly, we hold that
the trial court abused its discretion in admitting Kangieser’s and Edmonds’s
testimony.


 Id. 
          We sustain WesTTex’s issues one and two.
Denial of WesTTex’s Motion for Judgment Notwithstanding the Verdict 

          In issues three and four, WesTTex complains that, because “no competent
evidence” existed to support the jury’s award, the trial court erred in denying its
JNOV and in refusing to enter judgment awarding the Landowners $2,171. 
          The jury in this case found that the fair-market value of the pipeline easement
was $165,000. The only evidence offered at trial that tended to supported this figure
was the testimony of the Landowner’s experts. At trial, Edmonds testified that the
fair-market value of the WesTTex easement was $94,635 and that the value of the
right to assign the easement was $70,531. The total compensation owing the
Landowners, according to Kangieser, was $165,166. Similarly, Kangieser testified
that the fair-market value of the easement was $77,520 and that the value of the right
to assign the easement was $70,508, totaling $148,028. 
          WesTTex offered the testimony of its real-estate appraisal expert, David
Dominy. Dominy opined that the highest and best use for the condemned property
was agricultural purposes. Applying the “before-and-after” approach to appraising
the property, Dominy testified that the landowners were entitled to $2,171 in
compensation. 
          Following the jury’s verdict, WesTTex filed a motion for JNOV. As in its
motions to exclude, WesTTex argued in its JNOV that the opinion testimony of
Kangieser and Edmonds as to the fair-market value of the property taken was
inadmissible because the experts’ opinions were based on flawed methodology. On
this basis, WesTTex requested the trial court to disregard the jury’s finding as to the
fair market value of the condemned property and to modify the verdict to award the
Landowners $2,171, the amount provided by WesTTex’s valuation expert David
Dominy. The trial denied WesTTex’s JNOV.
          Undeniably, the only evidence that tended to support the jury’s award of
damages was Kangieser’s and Edmonds’s opinion testimony. As discussed above,
the testimony of the Landowners’ two experts was inadmissible; thus, it constituted
“no evidence.” See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997). However, a trial court is allowed to render JNOV and to substitute its own
judgment of the proper measure of damages only in certain circumstances. State v.
Huffstutler, 871 S.W.2d 955, 961 (Tex. App.—Austin 1994, no writ). A JNOV is
proper when a directed verdict would have been proper. Tex. R. Civ. P. 301; Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991). A
directed verdict is proper when the evidence conclusively proves a fact that
establishes a party’s right to judgment as a matter of law. See Kline v. O’Quinn, 874
S.W.2d 776, 785 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Under the
same rationale, a JNOV must be based on conclusive evidence that entitles the
moving party to judgment as a matter of law. See Huffstutler, 871 S.W.2d at 961. 
The evidence conclusively establishes an issue when the evidence is such that there
is no room for ordinary minds to differ as to the conclusion to be drawn from the
evidence. Triton Oil and Gas Corp. v. Marine Contractors and Supply, Inc., 644
S.W.2d 443, 446 (Tex. 1982).
          As previously mentioned, other than Kangieser’s and Edmonds’s testimony,
the only other valuation evidence presented at trial was the testimony of WesTTex’s
appraisal expert, David Dominy, who opined that the landowners were entitled to
$2,171 as compensation for the taking. After reviewing the record, we conclude that
the only competent evidence as to valuation remaining in the record—Dominy’s
opinion testimony—conclusively established that the loss sustained by the
Landowners was valued at $2,171.


 But see Baltzell, 01-01-00826-CV, slip op. at 18
(holding that evidence presented at trial did not conclusively establish amount of
compensation owed to landowner because WesTTex’s own appraisal experts
presented conflicting valuation testimony). Accordingly, we hold that the trial court
erred by denying WesTTex’s motion for JNOV and by failing to sign a judgment
awarding the Landowners $2,171.
          We sustain issues three and four.



 

Conclusion
          We reverse the portions of the judgment relating to the trial court’s award of
$165,000 to the Landowners. We remand the cause to the trial court for that court to
sign a judgment awarding $2,171 to the Landowners against WesTTex and to reassess
interest and court costs.
 
 
                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Higley, and Hedges.