

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00774-CV

Cory L. **MOORE**,
Appellant

v.

**JORDAN FORD, LTD.,**
Appellee

From the County Court at Law No. 10, Bexar County, Texas
Trial Court No. 372160
Honorable Irene Rios, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  July 10, 2013

AFFIRMED

Appellant, Cory Moore, appeals a take-nothing judgment rendered against him after the trial court struck his expert on damages.  In one issue on appeal, Moore asserts the trial court erred in striking his expert and granting a directed verdict.  We affirm.

### BACKGROUND

Moore purchased a "certified pre-owned" truck from appellee, Jordan Ford ("Jordan"), on April 30, 2008.  Moore testified he researched on the Ford website what a "certified vehicle" was, and he understood it to mean the truck went through 172-point inspection and a full history report.

Moore received the truck for $22,940 after paying a price of $23,440, plus a $500 rebate. Approximately two years later, Moore began thinking about selling his truck. In preparation, he obtained a "Carfax" report on the truck and learned at that point the truck, unbeknownst to him, had previously been stolen and damaged. A report from the Schertz police department confirmed that the truck had been stolen on September 17, 2007. In October of 2007 GEICO, the insurer, paid the actual cash value to the previous owner. The truck was subsequently recovered by authorities and GEICO took possession. A report by GEICO indicated the truck was not drivable and had suffered $2,130.02 in damage.

Moore sued Jordan for breach of warranty, fraud, and violations of the DTPA claiming Jordan represented the truck was a "Ford Certified Pre-Owner Vehicle" and Jordan had not informed him that the truck had been previously stolen and damaged, but instead knowingly concealed this information to induce Moore to purchase the truck.

## DAMAGES EXPERT

In his only issue on appeal, Moore asserts his expert on valuation and damages, Robbie Reed, met all the requirements for the admission of expert testimony and, therefore, the trial court erred in striking Reed.

When Moore introduced Reed as his expert on damages, Jordan moved to exclude Reed's testimony, asserting Reed failed to demonstrate that he had the qualifications or experience to render an opinion on what a truck was worth four years ago and also asserting that because Reed could not explain his methodology, his testimony was unreliable. The court held a preliminary hearing on the admission of Reed's testimony outside the presence of the jury. After the hearing, the trial court sustained Jordan's objection to Reed testifying as an expert. Jordan then moved for a directed verdict, which the trial court granted when Moore had no other witnesses to establish damages.

We review a trial court's decision on the admissibility of an expert's testimony under an abuse of discretion standard. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex. 1998). Under an abuse of discretion standard, an appellate court may reverse only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex. 1987).

Rule 702 of the Texas Rules of Evidence governs testimony by experts and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702.

Rule 702 requires that a proponent show an expert witness is qualified and that his testimony is relevant and based upon a reliable foundation. *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). Therefore, Rule 702 has three requirements for the admission of expert testimony: (1) the witness must be qualified, (2) the proposed testimony must be scientific, technical, or other specialized knowledge, and (3) the testimony must "assist the trier of fact to understand the evidence or to determine a fact issue." *Id.*; *see also* TEX. R. EVID. 702. "In order to constitute scientific knowledge which will assist the trier of fact, the proposed testimony must be relevant and reliable." *Robinson*, 923 S.W.2d at 556. In determining whether expert testimony is reliable, a court should examine "the principles, research, and methodology underlying an expert's conclusions." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006) (quoting *Exxon*, 88 S.W.3d at 629). A trial court does not decide whether the expert's conclusions are correct, but instead determines whether the analysis used to reach those conclusions is reliable. *Exxon*, 88 S.W.3d at 629. Expert testimony lacking a proper foundation

is inadmissible. *U.S. Renal Care, Inc. v. Jaafar*, 345 S.W.3d 600, 606–07 (Tex. App.—San Antonio 2011, pet. denied). "If the foundational data underlying opinion testimony are unreliable . . . any opinion drawn from that data is likewise unreliable." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).

At the preliminary hearing, Reed did not provide a resume, but testified he has worked in car sales for approximately twenty-one years and during that time he has been involved in "hundreds" of car sales and deals. He acknowledged he had not seen Moore's truck when Moore purchased it in 2008, and had not seen it until Moore attempted to sell it to him a few years later. Reed also admitted that he had never evaluated a vehicle that was not in front of him.

Reed testified that in assessing the value of a car, he takes into account "[t]he shape it's in, miles, . . . the paint, what it looks like, wear and tear." Reed testified when conducting an assessment of value on a vehicle he typically does so with the assistance of others, usually his sales manager. Reed testified that, in his opinion, the amount of Moore's damages was $6,203, which represented the difference in value between what Moore paid and what he received (i.e. a truck that was stolen and wrecked). On cross examination, Reed was asked how he arrived at $6,203:

Q:     The 6203, how did you come up with that number?

A:     Just by evaluating it, the damage, the — how rough it is, I mean, just by that.

Moore produced a report that was created by Reed and the sales manager Reed works with, "Bobby." Reed testified the writing on the report was not his own, but was Bobby's. Reed stated he and Bobby came up with the number together, but when asked about the report Reed stated "I haven't written on this," and "I think we looked at it before. I sat in [Bobby's] office when he was doing this." In arriving at a figure of $6,203 for Moore's damages, Reed testified he and Bobby "pulled up a vehicle that was from that time frame and that type of vehicle and then looked it up

what the value would be with it being normal and then looking at one being with the damage. Some of the stolen stuff, it's even harder to determine that because it's even more damaged." Reed testified he and Bobby used the "NADA official used car guide" in assessing value.

According to the report Reed referenced during his testimony, he and Bobby started with a value of $24,825, which was the "NADA official used car guide" estimated value of the "clean trade-in" value of a Ford truck similar to the one Moore purchased in April 2008, without damage. Handwritten on the report was an adjustment of $5,000 because the vehicle had been stolen, and another adjustment of $2,000 for "possible frame and body damage." Jordan's counsel cross-examined Reed about "possible frame and body damage":

> Q:     So possible frame and body damage? Does that mean that the salesman —
> of the general salesperson may not have known if it had damage or not but then
> deducted 2,000?
>
> A:     No. I don't think he did that. You could tell there was damage on the truck.
>
> Q:     In looking at it can you tell if it happened in 2008 or if it happened between
> 2008 and 2012?
>
> A:     It would be difficult.
>
> Q:     So if you hadn't seen the vehicle in 2008, would it be really difficult to
> know what it's worth in 2008?
>
> A:     It would be hard, yes.

The trial court also questioned Reed about the figure he arrived at for "possible frame and body damage":

> Q:     What damages did it sustain? I heard him say that. I heard him say that he
> discounted it $2,000 for possible frame and body damage, but I didn't hear a
> description of what that damage was, how he came to that number. Did you look
> at the truck?
>
> A:     With the sales manager, yes.
>
> Q:     When? In June or when?

A:     I don't want to tell you the wrong date.

Q:     Was it this year?

A:     I think.

Reed did not explain why the values of $5,000 or $2,000 had been deducted or how he and Bobby arrived at those values.

The report also provided both a "clean trade-in" value and a "clean retail" value of a truck similar to Moore's. The "clean trade-in" value was $23,825 and the "clean retail" value was $27,300. In arriving at $6,203 as the estimation in damages, Reed testified he and Bobby used the "clean trade-in" value to start with before making the deductions for the vehicle history. However, Moore purchased the truck at "retail" value, and was not trading it in. The trial court asked Reed why he used the trade-in value instead of the retail value:

Q:     And do you know why a trade-in value was used as a starting point versus a retail value?

A:     No, ma'am, I don't.

Q:     Does that make a difference?

A:     A little bit, yes, ma'am.

At that point, the trial court sustained Jordan's objections to Moore testifying as an expert.

Assuming Reed was qualified to give an opinion on the value of Moore's truck when Moore purchased it nearly four years prior, we conclude the trial court did not abuse its discretion in excluding Reed's testimony. Reed could not explain why, in arriving at his opinion on damages, the "clean trade-in" value was used as a starting point instead of the "clean retail" value—the difference in which was nearly $4,000. Reed also could not sufficiently explain why $2,000 was deducted for "*possible* frame and body damage," or why $5,000 was the value deducted for the vehicle's theft history. Reed could not explain his methodology or the underlying data which

formed the foundation of his opinion on damages. Accordingly, we conclude the trial court did not abuse its discretion in ruling Reed's expert testimony was inadmissible because his testimony was not demonstrated to be reliable.

## CONCLUSION

We overrule Moore's issue on appeal. The trial court's judgment is affirmed.

Sandee Bryan Marion, Justice