NO. 07-02-0278-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MARCH 31, 2003

_____


RODNEY COUCH, INDIVIDUALLY AND AS
NEXT FRIEND FOR TESSA COUCH, APPELLANT

V.

JOHN PAUL SIMMONS, M.D. AND COVENANT MEDICAL GROUP, APPELLEES


_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-512,394; HONORABLE SAM MEDINA, JUDGE

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.


OPINION


Rodney Couch, individually and as next friend of Tessa Couch, a minor, and Kathy

Adams, intervenor, appeal from a take-nothing summary judgment in their medical

malpractice suit against John Paul Simmons, M.D. and Covenant Medical Group. We

affirm.

BACKGROUND

Rodney Couch, individually and as next friend of Tessa Couch, a minor, filed suit against defendants John Paul Simmons, M.D. and Covenant Medical Group alleging that Simmons was negligent in his treatment of Tessa. Covenant Medical Group was alleged to have been the employer of Simmons, and was sued on the basis of *respondeat superior*. References to Simmons will encompass Covenant unless noted otherwise. Rodney is Tessa's father. Kathy Adams, Tessa's mother, intervened. For convenience, references to Rodney will be intended to include Kathy unless specifically noted otherwise.

On January 19, 2000, Tessa was undergoing physical therapy following surgery on her right knee. She developed a headache, weakness, confusion, tingling of her right arm and leg, and began vomiting. She was taken to the emergency room of Covenant Medical Center, where she was seen by Dr. Kowaleski, the emergency room physician. Dr. Kowaleski ordered tests, requested consultation by Dr. Simmons, a neurologist, and admitted Tessa to the hospital in the care of Dr. Simmons. Kowaleski's orders included neurological examinations every four hours. Simmons assumed Tessa's care and first saw her shortly after 7:00 p.m. on the evening of January 19th.

At 7:30 a.m. on the morning of January 20th, Tessa was found to have weakness in her right leg; she was unable to squeeze her right hand; and she would not respond verbally. Simmons was notified and ordered an EEG. The test findings were abnormal. Simmons ordered Tessa transferred to the pediatric intensive care unit. He examined her

2

shortly after noon. He then ordered administration of fluids intravenously and further studies. The studies indicated that Tessa had suffered an ischemic stroke of the brain.[1]

Suit was filed alleging that Dr. Simmons was negligent in his treatment of Tessa. The negligence allegations were supported by testimony from Robert Snodgrass, M.D., a professor of pediatric neurology. As relevant to this appeal, Snodgrass opined that Simmons failed to meet the appropriate standard of care by failing to timely administer intravenous fluids to Tessa, and that if IV fluids had been timely administered the chances were "9 out of 10" that Tessa would have had either no stroke or a lesser stroke with a smaller amount of brain injury from the stroke. In his deposition, Snodgrass expressed his opinion that Tessa's stroke was a progressive stroke which began during her physical therapy session, before she sought treatment at the emergency room or was attended by Simmons.

Citing E.I du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995) and its progeny, Simmons moved to strike the testimony of Snodgrass, plaintiffs' sole expert, as to the causal relationship between Simmons' alleged failure to timely administer IV fluids and the effects of Tessa's stroke. Simmons also filed an original, then an amended, no-evidence motion for summary judgment. The motion for summary judgment hinged in part on the trial court's ruling as to Snodgrass' testimony. Because Snodgrass was Rodney's only expert witness, if Snodgrass' testimony as to causation was stricken,

---

[1]An ischemic stroke occurs when tissue is damaged because of lack of sufficient blood flow to the tissue. The disruption of blood flow can result from one or more of several causes, including a clot in the blood vessel or narrowing of the vessel due to disease or spasm.

Rodney had no evidence to prove Simmons' alleged negligence was a proximate cause of the effects of Tessa's stroke and the damages sought.

The trial court granted Simmons' motion to strike, granted his motion for summary judgment and rendered a take-nothing judgment.

Rodney presents four issues by which he urges that the trial court abused its discretion: (1) in applying the Robinson test to Snodgrass' testimony instead of what he refers to as an "analytical gap" test enunciated in Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726-27 (Tex. 1998); (2) in finding that Snodgrass' testimony did not meet the Robinson test for reliability; (3) by allowing Simmons to file a motion for summary judgment after the scheduling order's deadline for filing dispositive motions; and (4) by refusing to grant Rodney an opportunity to obtain another expert witness. We will address the issues in the order presented.

## ISSUES 1 & 2: RELIABILITY OF
## DR. SNODGRASS' CAUSATION TESTIMONY

For an expert's testimony to be admissible under Texas Rule of Evidence 702, the expert must be qualified, and the expert's opinion must be relevant to the issues in the case and based upon a reliable foundation. See TEX. R. EVID. 702; Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 628-29 (Tex. 2002); Gammill, 972 S.W.2d at 720; Robinson, 923 S.W.2d at 556. As pertinent to this appeal,[2] Simmons challenged the reliability of

---

[2]Simmons maintains that he contests other allegations made against him, such as the allegation that he breached the standard of care. Because of the posture of the appeal

4

Snodgrass' testimony as to a causal relationship between the alleged breach of the appropriate standard of care by Simmons and the damage to Tessa from the stroke. Thus, we consider only the reliability requirements of Rule 702. See Zwahr, 88 S.W.3d at 629. The burden of showing the reliability of Snodgrass' testimony is on Rodney. See Robinson, 923 S.W.2d at 556.

Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. See Zwahr, 88 SW.3d at 629; Robinson, 923 S.W.2d at 557. Under such requirement, expert testimony is unreliable if it is not grounded in the methods and procedures of science and is no more than subjective belief or unsupported speculation. See Zwahr, 88 S.W.3d at 629. In applying this reliability standard, the trial court determines whether the analysis used to reach the opinions in question is reliable. See id; Gammill, 972 S.W.2d at 728. Expert testimony is also unreliable if there is too great an analytical gap between the data the expert relies upon and the opinion offered. See Zwahr, 88 S.W.3d at 629; Gammill, 972 S.W.2d at 727.

We review the trial court's decision to admit or exclude the testimony and opinions in question using the abuse of discretion standard. See Zwahr, 88 S.W.3d at 629. Thus, we review the trial court's decision to exclude Dr. Snodgrass' testimony to determine if some evidence supports the decision, see Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998), and to determine whether the trial court acted without reference to any guiding rules

---

before us, the only issue we address is Snodgrass' testimony as to causation. We express no opinion on any other issue.

and principles.  See Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

The validity of the causation question as to IV fluid administration is directly addressed in an affidavit from Snodgrass which was submitted by Rodney in opposition to Simmons' motion to strike and motion for summary judgment.  First, Snodgrass noted that "The theory is that normalization of plasma volume by vigorous IV hydration improves stroke outcome."  He also stated "This concept has not been directly tested.  Physicians are unwilling to deprive patients of IV fluids, as would be needed in the control group."  Yet, he proceeded to note that "The theory has been subject to peer review and publication." He referenced several peer review articles and attached some of those articles.

In attacking Snodgrass' testimony, Simmons points out that several of the articles do not directly address the causal relationship between failure to administer IV fluids and effects of the stroke.  Simmons cites two of the peer review articles which address the question and which conclude, in part, that (1) administration of fluids affects blood flow and hemodynamics to the brain, but (2) no specific beneficial relationship has been established between administration of IV fluids and stroke outcome.  Simmons further maintains that Snodgrass has not established sufficient personal experience in the effects of delayed IV fluid administration to render his opinion reliable under Gammill.

The peer review articles in question were before the trial court, along with a deposition from Snodgrass and his affidavit.  The trial court could have determined that the peer review articles did not support Snodgrass' causation testimony.  Also, Snodgrass'

6

affidavit and deposition testimony would support a conclusion by the trial court that Snodgrass did not evidence sufficient prior personal experience with, or study of the results of, failing to timely administer IV fluids to teenagers suffering strokes.[3] The trial court also could have considered the reliability of the causation opinions in light of Snodgrass' (1) testimony that the theory had not been directly tested; (2) conclusion that with timely administration of IV fluids Tessa probably would have had either no stroke or a lesser stroke with a smaller amount of brain injury; (3) failure to specify which outcome was more likely (no stroke or a lesser stroke); and (4) testimony that he could not specify how much less the injury would have been if the result of timely IV fluid administration had been a lesser stroke instead of prevention of the stroke.

The evidence supported a conclusion by the trial court that the causal relationship between the lack of what Snodgrass referred to as timely IV fluid administration and the outcome of Tessa's stroke was a theory to which Snodgrass adhered, but which he had not tested and on which he had insufficient personal experience to render his causation testimony reliable. Assuming, *arguendo*, that Snodgrass' testimony should have been considered under what Rodney refers to as the "analytical gap" methodology of Gammill, the record affords support for the trial court's striking of the testimony. See Gammill, 972 S.W.2d at 724-25.

In reviewing the record under the guidance of Robinson and its six non-exclusive factors, we note that Snodgrass' affidavit specifically addressed each of the six factors.

---

[3]The peer review articles referenced by Snodgrass indicate that stroke rates, recommended treatment modalities and results vary with age and other factors.

Thus, the trial court had before it Snodgrass' attempt to validate the theory both as to standard of care and as to causation. The affidavit stated that the theory had not been directly tested to determine what resulted from the failure to timely administer IV fluids. However, two of the peer review articles before the court addressed studies of case histories which contradicted Snodgrass' opinion that administration of IV fluids would have caused a better result for Tessa.[4]

We cannot say that there was no evidence to support the trial court's conclusion that Rodney did not prove the testimony to be reliable. Thus, the trial court did not abuse its discretion in striking Snodgrass' causation testimony under the guiding principles of Robinson. We overrule Rodney's first and second issues.

## ISSUE 3: LATE FILING OF MOTION
## FOR SUMMARY JUDGMENT

Rodney's third issue urges that the trial court abused its discretion in allowing Simmons to file a motion for summary judgment after the date set by a prior scheduling order for filing dispositive motions. Rodney also complains that under this record Simmons' motion to strike was a dispositive motion and that the trial court abused its discretion in allowing that motion to be filed late.

---

[4]At oral submission Rodney's counsel stated that the claim being made was that timely administration of IV fluids would have resulted in a better result for Tessa, not that her stroke would have been prevented.

8

The trial court signed a scheduling order dated March 9, 2001. The order directed that all motions which, if granted by the court, would dispose of part or all of the case, be filed by January 11, 2002. The order also provided that the dates set in the scheduling order could not be changed without the court's approval.

On February 22, 2002, Simmons filed a motion for summary judgment combined with objections to the expert opinions of Dr. Snodgrass on causation and a motion to strike the opinions. On February 25, 2002, the trial court signed an amendment to its scheduling order and changed the trial setting from March 29, 2002, to June 3, 2002. On February 25th, Rodney filed a motion to strike Simmons' motion to strike Snodgrass' testimony and for summary judgment because it was untimely filed. Various pleadings and motions were filed and orders entered thereafter, culminating with an order signed on May 31st granting Simmons' motion to strike and motion for summary judgment. Rodney filed an objection to the trial court's action. The trial court heard Rodney's objection on June 7th. As a result of the June 7th hearing, the trial court signed an order dated June 17th which (1) set aside the May 31st order, (2) extended the deadline for filing dispositive motions, (3) denied Rodney's motion to strike Simmons' motion for summary judgment and Snodgrass' testimony, (4) granted Simmons' motion to strike, and (5) granted Simmons' motion for summary judgment.

The parties agree that we review the trial court's action for abuse of discretion. Both parties cite Clanton v. Clark, 639 S.W.2d 929 (Tex. 1982) for the proposition that the trial court has wide discretion to manage its docket. Beyond citing Clanton, however, Rodney does not call our attention to any authority supporting his request that we interfere with the

9

trial court's management of its docket. More specifically, he does not cite authority which (1) allows us to set aside the trial court's order granting an extension of time for Simmons to file the motions in question, or (2) prevents the trial court from changing the date for filing dispositive motions, which seemingly is contemplated by the scheduling order itself which states that the dates cannot be changed "without the court's approval."

Failure to either cite authority, explain why no authority is cited, or advance substantive analysis waives the issue on appeal. See TEX. R. APP. P. 38.1(h); Moser v. Davis, 79 S.W.3d 162, 169, 170 (Tex.App.--Amarillo 2002, no pet.); In re Williams, 998 S.W.2d 724, 730 (Tex.App.--Amarillo 1999, no pet.).

Rodney does not explain why he cites no authority for his issue other than authority for the standard of review. We consider citation to a single case for the standard for review to be insufficient citation of authority to comply with the mandate of TEX. R. APP. P. 38.1(h) and the authorities cited above. We overrule issue three.

ISSUE 4: FAILURE TO GRANT TIME FOR
RODNEY TO OBTAIN ANOTHER EXPERT

By his fourth issue Rodney complains that the trial court should have granted him time to obtain another expert after Simmons' motion to strike Dr. Snodgrass' causation testimony was granted. He poses no standard of review for us to use and cites no authority either for a standard of review or for his substantive assertion of error. Nor does he claim that he requested a continuance or in any other manner advised the trial court of its alleged error.

10

To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefor, and obtain a ruling.  See TEX. R. APP. P. 33.1; Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999). In re C.O.S., 988 S.W.2d 760, 764-65 (Tex. 1999); General Chem. Corp. v. De La Lastra, 852 S.W.2d 916, 920-21 (Tex. 1993).  Rodney did not do so.  Moreover, failure to cite authority or explain the absence of such citation waives the issue on appeal.  See TEX. R. APP. P. 38.1(h); Moser, 79 S.W.3d at 169, 170.  We overrule issue four.

CONCLUSION

Having overruled Rodney's four issues, we affirm the judgment of the trial court.


Phil Johnson
Chief Justice

11