NO. 07-05-0351-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



FEBRUARY 24, 2006



______________________________




JEFFREY K. BRAZIL, APPELLANT



V.



TIMOTHY T. KHATER, M.D., APPELLEE




_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2003-523,253; HONORABLE WILLIAM C. SOWDER, JUDGE



_______________________________




Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.



OPINION


 Pursuant to section 51.014(d) of the Texas Civil Practice and Remedies Code
permitting an interlocutory appeal by agreed order, appellant Jeffrey K. Brazil presents a
sole issue contending the trial court erred in (1) striking the expert testimony of Jay Mark
Lustbader, M.D., of Washington D.C., regarding causation in his health care liability claim
against appellee Timothy T. Khater, M.D. and (2) granting in part Khater's no-evidence
motion for summary judgment. Specifically, he asserts the trial court erred in striking
Lustbader's testimony because his qualifications were not disputed and the testimony was
relevant and reliable. We affirm the order granting in part and denying in part objections
and motion to strike the expert's testimony and order granting in part and denying in part
Khater's amended no-evidence motion for summary judgment.

 Brazil was born with congenital cataracts which were surgically removed during
childhood. His aphakia created very poor vision for which he used contact lenses and or
glasses to correct. Brazil contacted Khater to inquire about intraocular placement of
lenses. Following lens implantation surgery, Brazil commenced this lawsuit asserting
Khater was negligent in performing the surgery. Brazil named Lustbader as an expert
witness to support his claim of negligence and to support proximate cause of the claimed
injuries and damages. After Lustbader's deposition was taken, Khater moved to strike 
portions of his testimony as ipse dixit statements that related to the proper standard of care
and causal connection between the surgery and the subsequent retinal detachment
suffered by Brazil. Upon consideration of the motion to strike, the trial court denied the
motion as to the proper standard of care, but granted it in part as to Lustbader's testimony
"to the effect that any alleged negligent act or omission on the part of Timothy T. Khater,
M.D. caused or contributed to the retinal detachment." 

 Upon a hearing on Khater's amended no-evidence motion for summary judgment
based on the order striking part of Lustbader's testimony that Khater's negligence caused
or contributed to the retinal detachment, the trial court granted the motion in part and
denied it in part. The parties elected to proceed with an agreed order prompting this
interlocutory appeal pursuant section 51.014(d) of the Code. 

 By his sole issue, Brazil contends the trial court erred in striking Lustbader's 
testimony regarding causation because his qualifications were not disputed and the
testimony was relevant and reliable. We disagree. Before we commence our analysis, we
first consider the appropriate standards of review.

STANDARDS OF REVIEW


No-Evidence Summary Judgment


 In our determination of whether the partial no-evidence summary judgment was
proper, we apply the standard of review presented in Kimber v. Sideris, 8 S.W.3d 672, 675-676 (Tex.App.--Amarillo 1999, no pet.).

Expert Testimony


 The admissibility of expert testimony is governed by the two part test set out in E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995), and is within
the discretion of the trial court. Id. at 558. Under Robinson, Brazil had the burden to show
(1) the expert was qualified and (2) the proffered testimony was relevant and based on a 
reliable foundation. To demonstrate an abuse of discretion, Brazil must also show the trial
court acted without reference to any guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106
S.Ct. 2279, 90 L.Ed.2d 721 (1986); Couch v. Simmons, 108 S.W.3d 338, 341 (Tex.App.--Amarillo 2003, no pet.). There is no abuse, however, simply because a trial court may
decide a matter within its discretion differently than an appellate court. Downer, 701
S.W.2d at 242. When reviewing matters committed to the trial court's discretion, a court
of appeals may not substitute its own judgment for that of the trial court, thus insulating the
trial court's decision from appellate second guessing. Bowie Memorial Hospital v. Wright,
79 S.W.3d 48, 52 (Tex. 2002).

Analysis 


 By his objection and motion to strike Lustbader's testimony, as material here, Khater
alleged the expert's causation opinion should be stricken because he could not rule out
with reasonable medical certainty or reasonable medical probability other non-negligent
causes of the retinal detachment, and his causation opinions were unreliable, speculative,
and /or constituted nothing more than ipse dixit.

 In our analysis, among other factors, we consider the six Robinson factors as
follows:

 (1) the extent to which the theory has been or can be tested;

 (2) the extent to which the technique relies upon the subjective interpretation
of the expert;

 (3) whether the theory has been subjected to peer review and publication;

 (4) the technique's potential rate of error;

 (5) whether the underlying theory or technique has been generally accepted
as valid by the relevant scientific community; and

 (6) the non-judicial uses that have been made of the theory or technique.

923 S.W.2d at 557. See also Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d
706, 714 (Tex. 1997). Further, the reliability requirement of Rule 702 of the Texas Rules
of Evidence focuses on the principles, research, and methodology underlying an expert's
conclusions. In Couch, we held that expert testimony is unreliable if it is not grounded in
the methods and procedures of science and is no more than subjective belief or
unsupported speculation. 108 S.W.3d at 341.

 We continue our analysis by considering factors two, three, and five discussed in
Robinson with relevant portions of Lustbader's testimony. By his deposition, he
acknowledged: 


 he knew of no scientific studies or any published literature to support
his causation opinion;
 he was unaware of any prevailing authority that discussed the
technique of using a suture versus a sulcus method of adhesion;
 he acknowledged he had never published any article or comment
regarding the procedure or his opinion;
 he did not recall ever seeing any article from a recognized journal that
supported his opinion during the last 13 years;
 he had never seen, diagnosed, read about, or studied a situation
whereby an inferiorly dislocated lens will cause a retinal detachment;
and



 his opinion was based on his training and experience.


 

 Citing Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998), 
Brazil contends the Robinson factors are not applicable because Brazil's surgery was
unusual "for today" and that both experts agreed the absence of medical literature and
research into these surgical circumstances is the result of continuing changes regarding
this type of surgery and how it is now performed. However, although Gammill suggests 
that experience may provide a sufficient basis for an expert's testimony in some cases, it 
also recognizes that such is not true in every case. Id. at 722. The fact that the expert's
opinion has not been published or evaluated in professional journals does not compel a
determination that his opinion is wrong, however the absence of any review or evaluation
by third parties renders his personal opinion unreliable. See Couch, 108 S.W.3d at 341-42. 

 To constitute evidence of causation, an expert opinion must rest in reasonable
medical probability. Insurance Co. of North America v. Myers, 411 S.W.2d 710, 713 (Tex.
1966). Later, in Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 500 (Tex. 1995), the
Court acknowledged the need to avoid opinions based on speculation and conjecture. 
Even assuming that Lustbader's opinion based on his personal experience in Washington
D.C. is correct, a question we do not decide, the absence of medical literature at this time
and general knowledge in the medical community of the procedure recommended by
Lustbadfer renders a determination of the foreseeability element of proximate cause
speculative. See Leitch v. Hornsby, 935 S.W.2d 114, 119 (Tex. 1996).

 Brazil suggests that Marvelli v. Alston, 100 S.W.3d 460, 479 (Tex.App.--Fort Worth
2003, pet. denied), supports his position that the absence of medical literature does not 
render the opinion merely subjective and ipse dixit statements. However, Marvelli is not
controlling because, considering the evidence presented there, the gatekeeper concluded
that the expert's opinions were not merely subjective ipse dixit statements unsupported by
scientific principle or data and were reliable. Moreover, the Robinson factors do not
constitute the legal equivalent of a litmus test, but instead, furnish guidelines for the trial
court to use in determining the relevance and reliability requirements in discharging its duty
as the gatekeeper. Here, however, based on the evidence before it, in exercising its
discretion, the gatekeeper excluded the expert's opinion as to causation. Concluding that
Brazil has not met his burden, we find the trial court did not abuse its discretion in striking
Lustbader's expert testimony regarding causation and, consequently signing the partial
summary judgment. Brazil's sole issue is overruled.

 Accordingly, the interlocutory order granting the no-evidence summary judgment in
part is affirmed.

 Don H. Reavis

 Justice



 Locked="false" Priority="67" Name="Medium Grid 1 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0374-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

MARCH 23, 2011

_____________________________

 

DOUG
SETTLER,  

 

                                                                                         Appellant


v.

 

CHARLES MIZE
D/B/A QUALITY FRAMING,  

 

                                                                                         Appellee

_____________________________

 

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2007-539,289; HONORABLE RUBEN GONZALES REYES,
PRESIDING

_____________________________

 

Opinion

_____________________________

 

 

Before QUINN, C.J., and HANCOCK  and PIRTLE, JJ.

            Doug Settler (Settler) sued Charles
Mize d/b/a Quality Framing (Mize) for personal injuries received while working
as a framer for Mize. The injuries suffered by him occurred when a garage
header fell as it was being raised. 
After hearing the evidence of all litigants, the jury found that Mize
was not negligent, and judgment was entered upon that verdict.  Settler appealed, claiming that 1) the trial
court abused its discretion in refusing to allow him to pose a particular
question to the jury during voir dire, and 2) the evidence was legally and
factually insufficient to support the verdict that Mize was not negligent.  We affirm the judgment. 

            Issue 1  Voir Dire

            During voir dire, Settler sought
permission to pose the following question to the jury:  

            The
Court will instruct you that you may not consider whether any party is covered
in whole or in part by insurance of any kind. 
There will be no evidence or discussion about insurance in this
case.  Some people may have such a strong
belief that jury verdicts affect insurance rates that they would be unable to
follow the Courts instruction.  My
question is whether you can follow the Courts instruction not to consider the
question of insurance?

 

After
the matter was debated by the litigants, counsel for Settler asked the trial
court:  So youre going to deny allowing
me to ask that question?  (Emphasis
added).  The court then replied:  That question that youve presented to the
Court, yes, sir.  (Emphasis added). In
so deciding, the trial court allegedly abused its discretion  because the ruling denied appellant his
right to ask a proper question [and] prevented determination of whether
grounds existed to challenge jurors for cause and denied [him the] intelligent
use of peremptory challenges.  The issue
is overruled for several reasons.

            First,
Settler never established, here or below, that the particular question was a
proper one.  When the trial court inquired
about whether he had legal authority supporting his purported right to ask
that question in that fashion, the response it received was . . .
I mean, its in the Courts Charge.  I
dont know that theres a case that says you can ask that particular question .
. . .  Apparently, that would be the
same answer we would receive if we were to make the same inquiry.  No authority addressing the legitimacy of
that particular question was given to us by Settler.  Nor did he explain why it was appropriate to
specifically say some people may have a strong belief that jury verdicts
affect insurance rates or why any of the other particular verbiage selected by
him was legitimate.   And, while Settler
talks to us at length about being able to generally voir dire the prospective
jurors on the subject of insurance and their ability to follow an instruction
directing them to avoid the consideration of insurance, nothing in the trial
judges comments or ruling prohibited him from generally delving into those
topics.  He simply was barred from asking
a specific question which he has yet to show was proper.

            Second, to secure reversal, Settler
was obligated to not only establish that the trial court erred but also that
the error was calculated to cause and probably did cause the rendition of an
improper judgment.  Aransas
County Navigation Dist. No. 1 v. Johnson, No. 13-05-563-CV, 2008 Tex. App. Lexis 3153 at *33 (Tex. App.-
Corpus Christi April 29, 2008, pet. denied) (mem. op.).  The second component of that obligation (i.e. harm) went unaddressed by him, as
well.  Thus, he did not satisfy his
appellate burden.

            Third, and though not basis in and
of itself for overruling the issue, Settlers representation about the Pattern
Jury Charges [being] created by the Committee on Pattern Jury Charges and
adopted by the Texas Supreme Court is wrong. 
Those charges are akin to forms developed by a committee of the State
Bar of Texas, not the Supreme Court. 
Furthermore, we know of nothing from the Supreme Court mandating  that the judiciary use them or illustrating
that the Supreme Court has adopted them as its own works.    

            Sufficiency of the
Evidence

            We next consider the allegations
concerning the sufficiency of the evidence. 
They are founded on the belief that Settler proved Mize was negligent in
failing to 1)  train his workers on the
safe method of raising a garage header, and 2) adopt a safe method of raising a
garage header.  The safe method
contemplated by Settler involved the use of personnel to support the header at
its connecting point as it was raised. 
In rejecting those claims of negligence, the jury purportedly
erred.   We overrule the issue.  

            Regarding the legal sufficiency
challenge posed, Settler had the obligation to show that the evidence
established that Mize was negligent, as a matter of law.  Dow Chemical Co. v.
Francis, 46 S.W.3d 237,
241 (Tex. 2001).  To  determine whether that burden was met
requires us to examine the record for evidence supporting the jurys finding
and, if there is none, to then examine the entire record to determine if the
contrary proposition was established as a matter of law.  Id.  If the jury had before it some evidence upon which it could
base its verdict, then we need go no further due to the first prong of the
test.  Given this standard of review, it
would seem encumbent upon an appellant like Settler to first address whether
any evidence existed that supported the jurys verdict, and, if some testimony
could possibily be construed as doing so, then explain why adopting such a
construction would be wrong.  

            As for the matter of factual
sufficiency, an appellant complaining of a jurys decision to deny him recovery
must illustrate that the finding was against the great weight and preponderance
of all of the evidence.  Id.
 Needless to say, satisfying either standard of
review is normally a difficult task. 
And, for the reasons discussed below, Settler did not do so here.

            First, the tact Settler took in
briefing his argument focused on the existence of evidence illustrating Mize
alleged misfeasance.  He did not comment
upon that appearing of record and purporting to show that Mize either acted
reasonably or that the supposed omissions did not cause the injury.  For instance, Settler accused Mize of being
negligent since the latter purportedly failed to provide a safe work place or
train his workers about safety. 
Furthermore, this supposed negligence consisted of omitting to teach or
direct workers to place their hands and feet at a particular point on the
header as it was raised so as to prevent it from kicking out if the nails or
like devices securing its base to the pivot point came loose.  Given this accusation, one witness testified that
if the header broke away as described, and someone had their feet or their
hands down there, thats a cause for another accident, and [s]ome of those
headers and beams are so heavy, and I dont see how one persons hands or
feet could stop it.  One could interpret
such testimony as indicating that 1) had Mize done what Settler said he should
have done, then the possibility of injury remained present and, 2) the practice
Settler said Mize should have utilized actually endangered those attempting to
support the header.  Settler did not attempt
to explain why interpreting that evidence in such a manner would be
unreasonable.  Nor did he attempt to
explain why it lacked sufficient probative value to enable reasonable jurors to
use it as basis for concluding that Mize was not negligent in the manner
suggested by Settler.    

The evidence about 1) appellant being considered to be an
experienced framer; 2) support via a hand or foot being appropriate only when
the header is not nailed to a floor plate, unlike the circumstances at bar; 3)
Mize and others having not seen a header fall in their numerous years of working
in the construction industry; 4) Mize having told the workers to have someone
hold the connection point but that they would do it their own way when he was
not on site; 5) support of the header at the connection point would have made
no difference if the nails were not properly placed; 6) a worker who could not
say whether he would have had someone hold the connection point even if he had
been trained to do so; and 7) the method utilized by Mize in raising the header
being a very safe method, a very accepted practice, and ordinary and
customary was also ignored by Settler. 
The latter did not explain why it and the other testimony mentioned
above failed to constitute some evidence upon which a reasonable jury could
reject his claims of negligence.  This
may be because such evidence actually constituted some evidence allowing it to
do so.  And, that there may have been
evidence supporting Settlers own contention did little more than raise
questions of fact for the jury to resolve. City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005).  Given these circumstances and the applicable
law, we cannot say that the manner in which the jury so resolved the factual
disputes was against the great weight and preponderance of the evidence.  Simply put, the evidence supporting the
verdict was neither legally nor factually insufficient.

            Accordingly, the judgment is
affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

Pirtle,
J., concurs in the result.