WESTTEX 66 PIPELINE
CO., Appellant,

v.

Donnie BULANEK, Jacko Garrett,
and Nancy Garrett, Appellees.

No. 01–02–00548–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 18, 2003.

Frederick D. Junkin, J. Mark Breeding, Andrews & Kurth, LLP, Houston, TX, for Appellant.

Todd Hamilton Colvard, William D. Noel, Houston, TX, Richard L. McElya, Angleton, TX, for Appellees.

Panel consists of Justices NUCHIA, HIGLEY, and HEDGES.*

## MEMORANDUM OPINION

LAURA CARTER HIGLEY, Justice.

In this eminent domain case, WesTTex 66 Pipeline Company (WesTTex) acquired a 50–foot wide, permanent pipeline easement across the property of appellees, Donnie Bulanek, Jacko Garrett, and Nancy Garrett ("the Landowners"). The only issue tried to the jury was the value of the Landowners' property acquired by WesTTex. We determine whether the trial court abused its discretion in admitting the opinion testimony of the Landowners' two real estate appraisal experts, Brad Kangieser and Tom Edmonds, who, over the objections of WesTTex, opined regarding the value of the easement rights acquired WesTTex. We also determine whether the trial court erred in denying WesTTex's motion for judgment notwithstanding the verdict ("JNOV").

We reverse and remand.

### Standards for Valuing a Pipeline Easement in a Condemnation Proceeding

■ In determining whether the trial court erred in admitting Kangieser's and Edmonds's testimony, we are guided by our holding and reasoning in *WesTTex v.*

---

* Justice Adele Hedges, who became Chief Justice of the Fourteenth Court of Appeals on December 8, 2003, continues to sit by assignment for the disposition of this case, which was considered on November 27, 2003.

*Baltzell,* No. 01–01–00826–CV, 2003 WL 21665312 (Tex.App.-Houston [1st Dist.] July 17, 2003, pet. filed) (corrected memorandum opinion). As here, the admissibility of Kangieser's and Edmonds's testimony was at issue in *Baltzell.* We held that the opinion testimony of Kangieser and Edmonds was irrelevant to determining the value of the property taken by WesT-Tex in that case and was thus inadmissible under Texas Rule of Evidence 702.[1] *Id.* at *7. In reaching our holding, we applied the standards articulated by the Texas Supreme Court in *Exxon Pipeline Company v. Zwahr,* 88 S.W.3d 623 (Tex.2002).

Also at issue in *Zwahr* was the admissibility of the testimony of the landowners' expert Brad Kangieser.[2] Restating the well-established legal principles applicable to valuing a pipeline easement in a condemnation proceeding, the *Zwahr* court stated as follows:

> Compensation for land taken by eminent domain is measured by the fair-market value of the land at the time of the taking. The general rule for determining fair-market value is the before-and-after rule, which requires measuring the difference in the value of the land immediately before and immediately after the taking. When, as here, only part of the land is taken for an easement, a partial taking occurs. In this situation, the before-and-after rule still applies, but compensation is measured by the market value of the part taken plus any diminution in value to the remainder of the land.
>
> In determining market value, the project-enhancement rule provides that the factfinder may not consider any enhancement to the value of the landown-

er's property that results from the taking itself. This is because the objective of the judicial process in the condemnation context is to make the landowner whole. To compensate a landowner for value attributable to the condemnation project itself, however, would place the landowner in a better position than he would have enjoyed had there been no condemnation....

> On the other hand, the factfinder may consider the highest and best use to which the land taken can be adapted. The existing use of the land ... is its presumed highest and best use, but the landowner can rebut this presumption by showing a reasonable probability that when the taking occurred, the property was adaptable and needed or would likely be needed in the near future for another use.
>
> Finally, Texas law permits landowners to introduce testimony that the condemned land is a self-sufficient separate economic unit, independent from the remainder of the parent tract with a different highest and best use and different value from the remaining land. In this situation, the market value of the severed land can be determined without reference to the remaining land. But when the portion of the land taken by eminent domain cannot be considered as a separate economic unit, the before-and-after method requires determining market value by evaluating the taken land as a proportionate part of the remaining land.

*Id.* at 627–28 (internal citations omitted).

Applying these legal principles, the *Zwahr* court concluded that Kangieser's

---

**1.** In *Gammill v. Jack Williams Chevrolet, Inc.,* our supreme court held that all expert testimony must be relevant and reliable under Rule of Evidence 702. 972 S.W.2d 713, 727 (Tex.1998). This holding includes the testimony of expert appraisal witnesses in con-

demnation actions. *Guadalupe–Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 807 (Tex.2002).

**2.** Unlike this case and *Baltzell,* Edmonds was not an expert in *Zwahr.*

testimony was irrelevant, and therefore inadmissible, to determining the value of the easement taking; thus, the trial court had abused its discretion in admitting Kangieser's testimony. *Id.* at 631. The *Zwahr* court provided two reasons for its holding: (1) in violation of the project-enhancement rule, Kangieser had impermissibly relied on Exxon's condemnation to establish a separate economic unit and to assign a value to the property and (2) Kangieser failed to utilize the "before-and-after" method in valuing the easement. *Id.* at 630–31. Of particular relevance to the *Zwahr* court was Kangieser's testimony that Exxon's condemnation defined the parameters of the economic unit. *Id.* at 629. Kangieser had testified that Exxon's taking created a separate economic unit that had a highest and best use as a pipeline easement. *Id.* at 626, 629.

■ In *Baltzell,* we noted that Kangieser and Edmonds also improperly relied on WesTTex's condemnation to define the parameters of the economic unit. *Baltzell,* at *5. Both experts testified that the 5.47-acre easement acquired by WesTTex in that case was a separate economic unit with a highest and best use as a pipeline easement. *Id.* After examining the record, we determined that, because Kangieser and Edmonds relied on WesTTex's condemnation to establish a separate economic unit and to assign a value to that unit, the experts' final opinions reflected enhancement in the condemned property's value that occurred only because of the

WesTTex project. *Id.* at *6. "Value that exists because of the condemnation project is not, under the project-enhancement rule, value for which a landowner may recover." *Id.* (citing *Zwahr,* 88 S.W.3d at 630). The record also revealed in *Baltzell* that Kangieser and Edmonds failed to employ the before-and-after valuation method to determine the value of the property condemned as mandated by the *Zwahr* court. *Id.* at *7 n. 8 (citing *Zwahr,* 88 S.W.3d at 627).

Because Kangieser's and Edmonds's opinions were premised on flawed methodology, we concluded in *Baltzell* that each expert's testimony was irrelevant to determining the value of the subject taking and was therefore inadmissible. *Id.* at *7. Accordingly, we held that the trial court had abused its discretion in admitting Kangieser's and Edmonds's testimony.[3] *Id.*

### Admissibility of Kangieser's and Edmonds's Opinions in the Instant Case

#### A. WesTTex's Challenges

■ In issues one and two, WesTTex complains that the trial court erred in admitting Kangieser's and Edmonds's testimony because the experts' opinions were based on improper valuation methodology.[4] In support of these issues, WesTTex raises the following points: (1) Kangieser and Edmonds failed to use the before-and-after approach to valuing the condemned prop-

---

3. In *Baltzell,* Kangieser and Edmonds also testified as to the value of the right to assign the easement. *WesTTex v. Baltzell,* 2003 WL 21665312 at *7 (Tex.App.-Houston [1st Dist.] July 17, 2003, pet. filed) (corrected memorandum opinion). We held that, because the value of the right to assign the easement was derivative of the value the experts had assigned to the fair-market value of the easement, such opinion testimony was likewise irrelevant and inadmissible. *Id.* at *7 n. 9.

4. Before trial, WesTTex filed motions to exclude Kangieser's and Edmonds's testimony, which were denied by the trial court. WesTTex also objected at trial to the admission of the experts' testimony; the trial court overruled the objections. Thus, WesTTex preserved its appellate challenges to the experts' opinion testimony.

erty; (2) Kangieser and Edmonds impermissibly included project enhancement in their valuations by relying on WesTTex's condemnation to compute the easement's fair-market value; (3) Kangieser's and Edmonds's opinions were premised on a flawed conclusion that the 3.915 acres subject to the easement comprised a separate economic unit with a highest and best use as a pipeline easement; and (4) Kangieser's and Edmonds's opinions as to the value of the right to assign the easement were unreliable.

### B. KANGIESER'S AND EDMONDS'S OPINIONS

 Before trial, the parties stipulated that Kangieser and Edmonds each utilized the same appraisal methodology as each had in *Baltzell* to arrive at his respective opinion regarding the values of the easement rights being acquired.[5] The parties' stipulations amount to judicial admissions, which generally are conclusive on the party making them. *See Mendoza v. Fid. and Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex.1980); *Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 825 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Thus, the Landowners have judicially admitted that Kangieser and Edmonds utilized the same valuation methodologies in the underlying proceeding as each had in *Baltzell*. Such conclusion is also supported by the record in this case.

 As in *Baltzell*, Kangieser and Edmonds also improperly relied on WesTTex's condemnation to define the parameters of the economic unit. Kangieser and Edmonds each testified that the 3.915 acres subject to the easement had a high-

est and best use as a pipeline easement.[6] Implicit in the experts' testimony is that each expert considered the 3.915 acres to be a separate economic unit.

In addition, Kangieser and Edmonds each testified that he had not used the before-and-after valuation method in appraising the property acquired by WesTTex. Both experts appraised the 3.915–acre easement without reference to the parent tract and provided a value for condemned property as it existed on July 24, 1998, the date of the taking. Neither expert determined the value for the condemned property before or after the taking or with reference to the entire parent tract as required by the before-and-after valuation method. Rather, Kangieser and Edmonds used the "sales comparison approach," otherwise known as the "market approach," in valuing the condemned property. Utilizing such approach, Kangieser and Edmonds arrived at a fair-market value for the condemned property by evaluating and comparing the sales of pipeline easements similar to the WesTTex easement.

The Landowners assert that their experts' valuation methodology was appropriate under the facts of this case. They point out that *Zwahr* does not require a before-and-after valuation of the entire property when landowners introduce evidence that the condemned property is a self-sufficient economic unit, independent from the remainder of the parent tract with a different highest and best use and different value from the remaining land. *Zwahr*, 88 S.W.3d at 628. Under those

---

**5.** Counsel representing the parties in *Baltzell*, at both the trial and appellate levels, are the same as the trial and appellate counsel representing the parties in the instant case.

**6.** Unless otherwise indicated, all reference to Kangieser's and Edmonds's testimony in this

case are from their depositions, which were offered in support of WesTTex's motions to exclude the experts' testimony. Each expert testified consistently with his deposition testimony at trial.

circumstances, the market value of the severed land can be determined without reference to the remaining land. *Id.*

The Landowners contend that the 3.915 acres subject to the easement was a separate economic unit with a highest and best use as a pipeline easement because it was an established "pipeline corridor." For this reason, the Landowners assert that their experts could assign the 3.915 acres a value independent of the parent tract. The Landowners premise this argument on the fact that the pipeline easement obtained by WesTTex contained four previously constructed pipelines. WesTTex laid its pipeline at issue in this case completely within the four preexisting pipeline easements. The strip of land containing the WesTTex pipeline, and the four preexisting pipelines, is adjacent to three additional pipelines; thus, there were seven preexisting pipelines in the vicinity where WesTTex laid its pipeline. The Landowners contend that the seven preexisting pipelines constituted an established pipeline corridor, which comprised a separate economic unit. However, neither Kangieser nor Edmonds opined that the acreage subject to the seven preexisting pipelines was a separate economic unit. Instead, the experts testified that *the 3.915 acres subject to the WesTTex easement,* which is only a portion of the claimed pipeline corridor, comprised a separate economic unit.

As such, Kangieser's and Edmonds's testimony in this respect does not support the Landowners' contention that it was proper to value the 3.915 as a separate economic unit. To the contrary, the experts' testimony on this point further served to demonstrate that the experts impermissibly relied on the condemnation at issue to establish a separate economic unit and to assign value to that unit.[7]

In sum, the record reveals that, in valuing the property condemned by WesTTex, Kangieser and Edmonds impermissibly considered the enhancement in the property's value that occurred only because of WesTTex's project. Kangieser and Edmonds improperly assessed the value of the easement to WesTTex, not the loss suffered by the Landowners. *See Zwahr,* 88 S.W.3d at 631. Kangieser and Edmonds also failed to employ the before-and-after valuation method, which, as stated in *Zwahr,* is the appropriate method to apply in pipeline condemnation proceedings in which the subject land is not a separate economic unit. *Id.* at 627. As we did in *Baltzell,* we conclude that the testimony of Kangieser and Edmonds was irrelevant to determining the value of property acquired by WesTTex and was therefore inadmissible. *Baltzell,* at *7. Accordingly, we hold that the trial court

---

7. In a related point, the Landowners also contend that they were entitled to any "enhanced" value created by the preexisting pipelines. In support of this contention, the Landowners cite *Fuller v. State* for the proposition that the project-enhancement rule does not apply when the subject taking was not within the scope of the original project. 461 S.W.2d 595, 598 (Tex.1970). The Landowners misstate the exceptions found in *Fuller.* The *Fuller* court stated that a landowner may benefit from enhancement in the land's value attributable to the improvement for which the land is condemned under the following limited circumstances: (1) when the land taken was not within the original scope of the project, but was needed for expansion or for the purposes that might be regarded as incidental to the project; (2) when the general location of the project is fixed, but the exact location or the extent thereof is uncertain; and (3) when the condemnor first takes a limited amount of land, the value of near by property increases, and then the condemnor takes an additional amount of land. *Id.* at 598–99. None of these circumstances exists in the instant case. Thus, the experts' valuation opinions in this case were subject to the project-enhancement rule.

abused its discretion in admitting Kangieser's and Edmonds's testimony.[8] *Id.*

We sustain WesTTex's issues one and two.

### Denial of WesTTex's Motion for Judgment Notwithstanding the Verdict

██ In issues three and four, WesTTex complains that, because "no competent evidence" existed to support the jury's award, the trial court erred in denying its JNOV and in refusing to enter judgment awarding the Landowners $2,171.

The jury in this case found that the fair-market value of the pipeline easement was $165,000. The only evidence offered at trial that tended to supported this figure was the testimony of the Landowner's experts. At trial, Edmonds testified that the fair-market value of the WesTTex easement was $94,635 and that the value of the right to assign the easement was $70,531. The total compensation owing the Landowners, according to Kangieser, was $165,166. Similarly, Kangieser testified that the fair-market value of the easement was $77,520 and that the value of the right to assign the easement was $70,508, totaling $148,028.

WesTTex offered the testimony of its real-estate appraisal expert, David Dominy. Dominy opined that the highest and best use for the condemned property was agricultural purposes. Applying the "before-and-after" approach to appraising the property, Dominy testified that the landowners were entitled to $2,171 in compensation.

Following the jury's verdict, WesTTex filed a motion for JNOV. As in its motions to exclude, WesTTex argued in its JNOV that the opinion testimony of Kangieser and Edmonds as to the fair-market value of the property taken was inadmissible because the experts' opinions were based on flawed methodology. On this basis, WesTTex requested the trial court to disregard the jury's finding as to the fair market value of the condemned property and to modify the verdict to award the Landowners $2,171, the amount provided by WesTTex's valuation expert David Dominy. The trial denied WesTTex's JNOV.

██ Undeniably, the only evidence that tended to support the jury's award of damages was Kangieser's and Edmonds's opinion testimony. As discussed above, the testimony of the Landowners' two experts was inadmissible; thus, it constituted "no evidence." *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). However, a trial court is allowed to render JNOV *and* to substitute its own judgment of the proper measure of damages only in certain circumstances. *State v. Huffstutler*, 871 S.W.2d 955, 961 (Tex. App.-Austin 1994, no writ). A JNOV is proper when a directed verdict would have been proper. Tex.R. Civ. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). A directed verdict is proper when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law. *See Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Under the same rationale, a JNOV must be based on conclusive

---

**8.** Kangieser and Edmonds also testified as to the value of the right to assign the easement. We hold, as we did in *Baltzell*, that, because the value of the right to assign the easement was derivative of the value the experts had assigned to the fair-market value of the easement, such opinion testimony was likewise irrelevant and inadmissible. *Baltzell*, at *7 n. 9.

evidence that entitles the moving party to judgment as a matter of law. *See Huffstutler,* 871 S.W.2d at 961. The evidence conclusively establishes an issue when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from the evidence. *Triton Oil and Gas Corp. v. Marine Contractors and Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

■ As previously mentioned, other than Kangieser's and Edmonds's testimony, the only other valuation evidence presented at trial was the testimony of WesTTex's appraisal expert, David Dominy, who opined that the landowners were entitled to $2,171 as compensation for the taking. After reviewing the record, we conclude that the only competent evidence as to valuation remaining in the record—Dominy's opinion testimony—conclusively established that the loss sustained by the Landowners was valued at $2,171.[9] *But see Baltzell,* at *8 (holding that evidence presented at trial did not conclusively establish amount of compensation owed to landowner because WesTTex's own appraisal experts presented conflicting valuation testimony). Accordingly, we hold that the trial court erred by denying WesTTex's motion for JNOV and by failing to sign a judgment awarding the Landowners $2,171.

We sustain issues three and four.[10]

### Conclusion

We reverse the portions of the judgment relating to the trial court's award of $165,000 to the Landowners. We remand

**9.** In their briefing, the Landowners attack Dominy's opinion testimony, asserting that it is not competent evidence. However, the Landowners did not challenge the admissibility of Dominy's testimony in the trial court. Thus, such contention has not been preserved for our consideration.

the cause to the trial court for that court to sign a judgment awarding $2,171 to the Landowners against WesTTex and to reassess interest and court costs.

**10.** Because of the disposition of issues one through four, we need not reach WesTTex's issues five through eight pertaining to jury-charge error. *See* TEX.R.APP. P. 47.1.