**Opinion issued March 5, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00448-CV**

———————————

**IN RE HSC PIPELINE PARTNERSHIP, LLC**, **Relator**

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**MEMORANDUM OPINION**

In its petition for writ of mandamus, relator, HSC Pipeline Partnership, LLC ("HSC"), challenges the trial court's May 23, 2023 orders granting the fifth and sixth motions to compel discovery as to the cost, revenue, and profitability of HSC's Pipeline (the "pipeline"), filed by real parties in interest, Terrance J. Hlavinka ("Terrance"), Kenneth Hlavinka, Terrance Hlavinka Cattle Company, and Tres

Bayou Farms (collectively, "the Hlavinkas") in HSC's suit for condemnation.[1]  In its sole issue, HSC contends that the trial court erred in "compelling discovery in[] areas which the Texas Supreme Court has held to be irrelevant and inadmissible."

We conditionally grant the petition.[2]

## Background

This case stems from a condemnation proceeding initiated by HSC to obtain the right to a pipeline easement across four tracts of land owned by the Hlavinkas after they refused HSC's offer to purchase the easement.  HSC owns pipeline systems in Texas for the transportation of various products, including polymer-grade propylene ("PGP").

Following a November 29, 2018 trial court judgment in favor of HSC, the Hlavinkas filed a notice of appeal, raising the following issues: (a) the trial court erred by granting summary judgment in HSC's favor; (b) the trial court erred by denying the Hlavinkas' plea to the jurisdiction wherein the Hlavinkas argued that the trial court did not have jurisdiction over the matter because (i) PGP was neither crude petroleum under the Texas Natural Resources Code, nor an oil product or

---

[1]  On June 15, 2023, this Court requested a response to HSC's petition for writ of mandamus from the Hlavinkas.  The Hlavinkas did not file a response.

[2]  The underlying case is *HSC Pipeline Partnership, LLC v. Terrance J. Hlavinka, Kenneth Hlavinka, Terrance Hlavinka Cattle Company, and Tres Bayou Farms*, Cause No. CI54928, pending in County Court at Law No. 2 of Brazoria County, Texas, the Honorable Thomas Pfeiffer presiding.

liquefied mineral under the Texas Business Organizations Code and/or (ii) HSC was not a common carrier because the sought-after easement was not for "public use," and thereby, HSC did not have authority to condemn the Hlavinkas' property; (c) the trial court erred by admitting the affidavits of certain HSC's witness; and (d) the trial court erred in excluding Terrance's testimony[3] as to the market value of the condemned easement.[4]

On appeal, this Court sustained the Hlavinkas' first issue, which challenged the trial court's granting of summary judgment in HSC's favor, and we held that HSC did not conclusively establish that it was a common carrier with the power of eminent domain.[5] But the Court overruled the Hlavinkas' second issue, which challenged the denial of their plea to the jurisdiction, and held that HSC's evidence was sufficient to create a question of fact as to whether HSC was a common carrier with authority to condemn the property, thus prohibiting the trial court from granting

---

[3]  In the trial court, the Hlavinkas sought to introduce Terrance's testimony that based on two recent easement sales to other pipeline operators, his "per rod" calculation of value was $3.3 million. HSC moved to exclude the testimony about those sales, asserting that the Hlavinkas' current use of the proposed easement was for agriculture, and thus it must be presumed that agriculture is the condemned property's highest and best use. The trial court granted HSC's motion to exclude, leaving the agricultural value of the easement as the only evidence regarding the value of the property taken. Ultimately, the trial court awarded the Hlavinkas $132,293.36 in compensation.

[4]  *See Hlavinka v. HSC Pipeline P'ship, LLC*, 605 S.W.3d 819, 824 (Tex. App.—Houston [1st Dist.] June 18, 2020), *aff'd in part, rev'd in part*, 605 S.W.3d 483 (Tex. 2022).

[5]  *See id.* at 827–35.

the Hlavinkas' plea to the jurisdiction.[6] The Court also overruled the Hlavinkas'

third issue about certain HSC affidavits, but we sustained the Hlavinkas' fourth

issue, holding that that the trial court erred in excluding Terrance's testimony as to

the fair market value of the condemned easement.[7] Essentially, on direct appeal, this

Court held that although HSC, when transporting PGP, was eligible for

common-carrier status with eminent domain authority, whether the pipeline served

a public use presented a question of fact for a jury to resolve.[8] Further, we held that

the trial court erred in excluding Terrance's testimony about easement sales because

the sales of easement rights granted on the same property were admissible as some

evidence of the market value of the land taken at its highest and best use.[9]

Subsequently, both HSC and the Hlavinkas filed petitions for review with the

Texas Supreme Court, which the court granted.[10] In its decision, the Texas Supreme

Court, like this Court, "conclude[d] that Texas Business Organizations Code

[s]ection 2.105 grant[ed] common-carrier eminent domain authority for the

construction and use of a PGP pipeline."[11] The Texas Supreme Court, however, held

---

[6]     *See id.*

[7]     *See id.* at 836–42.

[8]     *See id.* at 834–35.

[9]     *See id.* at 836–42.

[10]    *See Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 438 (Tex. 2022).

[11]    *See id.* at 488.

4

that the determination of whether the pipeline served a public use was "a legal one, [and] not one for a jury to decide" and "HSC ha[d] established that the pipeline serve[d] a public use."[12]

In accord with this Court's opinion, the Texas Supreme Court further "conclude[d] that a property owner[,] [such as Terrance, could] testify to sales of pipeline easements across the property made to other pipeline carriers, secured through arms' length transactions, as some evidence of the current highest and best use of the property taken" and the "exclusion of [Terrance's] testimony [in the trial court] denied the Hlavinkas their opportunity to rebut the presumption that the land's highest and best use was purely agricultural."[13]  Ultimately, the Texas Supreme Court "remand[ed] the case to the trial court for [a] determination of the fair market value of the [Hlavinkas'] property at the time it was taken."[14]

On remand, in the trial court, the Hlavinkas served HSC with a Fifth Motion to Compel - HSC Depositions[15] and a Sixth Motion to Compel - HSC Answers and Documents.  The Hlavinkas' fifth motion to compel requested that the trial court order HSC to produce a corporate representative for deposition no later than ten days

---

[12]     *See id.* at 487–88, 496.

[13]     *See id.* at 488, 498.

[14]     *See id.* at 499.

[15]     Prior to their fifth motion to compel, the Hlavinkas served HSC with a Notice of Intention to Take Oral Deposition of HSC's Corporate Representative on thirteen subject matters.  HSC filed two motions to quash that notice.

from the date of the trial court's order, and their sixth motion to compel requested that the trial court order HSC to respond to the Hlavinkas' interrogatories and requests for production.

HSC filed a combined response to the Hlavinkas' fifth and sixth motions to compel, asserting that the Hlavinkas were "seek[ing] discovery into irrelevant and inadmissible sales of pipeline easements to HSC, despite the well-established rule in Texas that sales to condemning authorities are not evidence of comparable sales." Further, HSC asserted that "[t]he Hlavinkas' discovery requests on [such] issues [we]re solely for purposes of harassment and should be denied in their entirety." HSC also asserted that "[t]he only issue remaining for trial in th[e] case [was] the determination of just compensation for the taking," and "[t]he profitability of the [p]ipeline ha[d] no bearing whatsoever on that determination." (Emphasis omitted). Additionally, HSC asserted that "the profitability of a pipeline [was] inadmissible under the project[-]enhancement rule, which preclude[d] consideration of the value of the land to the condemnor (as opposed to its market value) or any enhancement in the value of the land due to the condemnor's project or need for the land." HSC requested that the trial court deny the Hlavinkas' motions to compel.

The trial court held a hearing on the Hlavinkas' motions to compel.[16] On May 23, 2023, the trial court entered two orders, one granting the Hlavinkas' fifth motion

---

[16] At the hearing, the trial court also considered a motion to compel filed by HSC.

to compel and ordering HSC's company representative to appear for a deposition within ten days, and the second granting Hlavinkas' sixth motion to compel, ordering HSC to respond to Hlavinkas' interrogatories and requests for production, and overruling all of HSC's objections to the Hlavinkas' discovery requests.

## Standard of Review

"Mandamus relief is warranted when a trial court clearly abuses its discretion and the relator has no adequate remedy by appeal." *In re YRC Inc.*, 646 S.W.3d 805, 808 (Tex. 2022) (orig. proceeding); *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). "A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles." *See In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (internal quotations omitted). Further, "[t]rial courts have no discretion in determining what the law is or in the application of the law to the facts." *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 763 (Tex. 2020).

## Discovery

In its first and second issues, HSC argues that the trial court erred in granting the Hlavinkas' fifth and sixth motions to compel, which sought depositions[17] and

---

[17] Specifically, in its mandamus petition, HSC seeks relief as to the following "subject matters" for deposition:

7

responses to certain requests for production[18] from HSC, because the sole issue

- Deposition Subject Matter Number 2: "Any pro-forma or forecast for the costs of the entire pipeline project for the [p]ipeline which crosses [the Hlavinkas'] property";

- Deposition Subject Matter Number 3: "Any pro-forma or forecast for the revenue of the entire pipeline project for the [p]ipeline which crosses [the Hlavinkas'] property";

- Deposition Subject Matter Number 4: "Any pro-forma or forecast for the internal rate of return or any rate of return for the entire pipeline project for the [p]ipeline which crosses [the Hlavinkas'] property";

- Deposition Subject Matter Number 5: "Any cost sharing agreements with the customers using the [p]ipeline";

- Deposition Subject Matter Number 6: "Any investor or internal presentations on the costs, revenue or profit from each [p]ipeline (actual or projected)"; and

- Deposition Subject Matter Number 7: "The costs, revenue and profit for the [p]ipeline."

[18] In its mandamus petition, HSC seeks relief from the following requests for production sought by the Hlavinkas:

- Request for Production Number 45: "Produce all communications, including emails and texts, between [HSC] and any customer of [HSC] discussing the costs to construct or operate the pipeline involved in this lawsuit. This includes and is not limited to any and all communications with Braskem America, Inc. or any affiliated entity";

- Request for Production Number 56: "Produce all communications, including emails and texts, between [HSC] and any customer of [HSC] discussing revenue or rate of return for pipelines which would cross [the Hlavinkas'] [p]roperty"; and

- Request for Production Number 57: "Produce all [HSC's] internal communications, all notes, including any meeting notes, and emails and texts, discussing revenue or rate of return for proposed or actual pipelines crossing [the Hlavinkas'] [p]roperty. This does not include communications with counsel or work product."

8

before the trial court was "the determination of the fair market of the easement on the date of take," "the cost, revenue, and profitability of the pipeline is irrelevant" to fair market value of the easement, and HSC has no adequate remedy by appeal.

## A. The Trial Court Abused its Discretion by Compelling Discovery as to the Economics of the Pipeline

"[T]he scope of discovery is within the trial court's discretion." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). "Generally, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether the matter relates to a claim or defense of the party seeking discovery or any other party's claim or defense." *Rescue Concepts Inc. v. HouReal Corp.*, No. 01-20-00553-CV, 2022 WL 2976299, at *11 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. denied) (mem. op.).

However, the trial court's discretion is not unlimited. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). "The trial court abuses its discretion by ordering discovery that exceeds that [which is] permitted by the rules of procedure." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding) (internal quotations omitted); *see also In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding). "An overbroad discovery request is, in essence, one that seeks irrelevant information." *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (orig. proceeding). Evidence is relevant if it tends to make a consequential

fact "more or less probable than it would be without the evidence." *Id.* (internal quotations omitted). Relevancy is evaluated on a case-by-case basis. *In re Sun Coast Res.*, 562 S.W.3d at 146. The party resisting discovery has the burden of establishing that the trial court abused its discretion. *See id.*

"Both the United States and Texas Constitutions require governments to compensate landowners for takings of their property for public use." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001) (citing U.S. CONST. amend. V; TEX. CONST. art. 1, § 17). "[T]he objective of the judicial process in the condemnation context is to make the landowner whole." *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012) (alteration in original) (internal quotations omitted). "In measuring the landowner's compensation for condemned property, the question is, what has the owner lost, not what has the taker gained." *Id.* (internal quotations omitted). And "[t]he value-to-the-taker rule prohibits an owner from receiving an award based on a tract's special value to the taker, as distinguished from its value to others who may or may not possess the power to condemn." *Id.*

On direct appeal in the underlying case, the Texas Supreme Court concluded that Terrance, as the landowner, could testify about sales to *other* carriers of pipeline easements across the Hlavinkas' property, as some evidence of the current highest and best use of the property taken. *Hlavinka*, 650 S.W.3d at 496–98 ("Sales of

10

easements on this property to other pipeline companies, combined with the existence of pipelines running parallel and adjacent to HSC's pipeline, provide some evidence from which a factfinder reasonably could conclude that the Hlavinkas could have sold to another the easement that they instead were compelled to sell to HSC."). Thus, HSC argues that the trial court erred in compelling discovery on cost, revenue, and profitability of HSC's proposed pipeline because such information is irrelevant to the issue on remand, namely, the fair market value of the easement. We agree.

In arguing that their discovery requests were relevant, the Hlavinkas, in the trial court, relied on a certain statement in the Texas Supreme Court's direct-appeal opinion: "A condemnation should not be a windfall for a landowner. Nor should it be a windfall for a private condemnor. A condemnor must pay a fair price for the value of the land taken." *Id.* at 499. Accordingly, the Hlavinkas asserted that the only way to determine whether a "windfall" had occurred was for them to discover "how much the project cost [versus] how much it ma[de] [versus] what a pro-froma showed it . . . to make" because "[i]f the project . . . cost 10 dollars, yet it ma[de] 100 dollars a year, then that [would be] a windfall to a condemner." But this passage from the supreme court's opinion has an additional sentence that the Hlavinkas do not mention. That sentence explains that "[e]vidence of recent fair market sales to secure easements running across the property that precede the taking are admissible to establish the property's highest and best use, and its market value, at the time of

11

the taking." *Id.* This sentence is important because, as explained above, it is the basis for the court's remand to allow Terrance to testify about the valuation of the Hlavinkas' property and to rebut the presumption that the highest and best use of their land was purely agricultural. Nowhere in its opinion does the supreme court suggest that evidence of the costs, revenue, and profits of HSC's own proposed pipeline is relevant to establishing the Hlavinkas' property's fair market value. Rather, as the supreme court explained:

> Market value is the price which the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it. Arms' length transactions are appropriate evidence of market value, provided the sales are voluntary, contemporary, local, and involve land with similar characteristics. Finally, the project[-]enhancement rule in condemnation law disallows the inclusion of any increase in market value attributable to the project itself.

*Id.* at 496–97 (internal footnotes and quotations omitted). "This is because the objective of the judicial process in the condemnation context is to make the landowner whole." *WesTTex 66 Pipeline Co. v. Bulanek*, 213 S.W.3d 353, 355 (Tex. App.—Houston [1st Dist.] 2003), *aff'd as modified*, 209 S.W.3d 98 (Tex. 2006). "To compensate a landowner for value attributable to the condemnation project itself, however, would place the landowner in a better position than he would have enjoyed had there been no condemnation." *Id.* (internal quotations omitted).

Indeed, when HSC attempted to rely on *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002), to argue to the Texas Supreme Court that Terrance's

valuation testimony violated the project-enhancement rule because it impermissibly considered enhancement to the land resulting from the pipeline itself, the supreme court disagreed, noting that the proffered testimony was not that the easement was valuable due to HSC's interest, but because purchasers other than HSC also valued the easement. *Hlavinka*, 650 S.W.3d at 497–98.

It is well-established that "value that exists because of the condemnation project is not, under the project-enhancement rule, value for which a landowner may recover." *Zwahr*, 88 S.W.3d at 630. Thus, the compelled discovery as to HSC's cost data is irrelevant to determining the value of the land taken from the Hlavinkas. *Id.* at 631. And the trial court erred in compelling HSC to disclose financial information of the pipeline because it violated the project-enhancement rule. *Id.* at 628 (reversing condemnation award, holding testimony of landowners' expert was irrelevant and inadmissible because he "impermissibly included project enhancement in his valuation by relying on [the] condemnation itself to compute the easement's fair-market value").

We hold that the trial court abused its discretion in granting the parts of the Hlavinkas' fifth and sixth motions to compel that sought deposition testimony and production of documents as to the costs, revenue, and profits of the pipeline.

We sustain HSC's first issue.

**B.     HSC Has No Adequate Remedy by Way of Appeal**

The Texas Supreme Court has made clear that trial court discovery orders permitting discovery into irrelevant matters require reviewing courts to intervene by mandamus.  *See In re Kuraray Am.*, 656 S.W.3d 137, 142 (Tex. 2022).  And the supreme court has consistently held that a relator "lack[s] an adequate appellate remedy from orders compelling discovery beyond what the rules allow."  *In re Millwork*, 631 S.W.3d 706, 714 (Tex. 2021) (orig. proceeding).  A party "has no adequate remedy by appeal when [it is] compelled to respond to discovery that is irrelevant."  *In re Liberty Cnty. Mut. Ins. Co.*, 557 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (concluding relator lacked adequate remedy because trial court order was not "reasonably calculated to lead to the discovery of admissible evidence" (internal quotations omitted)).  Here, because we have held that the trial court erred in compelling discovery on irrelevant issues, we hold that HSC lacks an adequate remedy by way of appeal and mandamus relief is appropriate.

We sustain HSC's second issue.

## Conclusion

We conditionally grant HSC's petition for writ of mandamus and direct the trial court to vacate the parts of its May 23, 2023 orders granting the Hlavinkas' fifth and sixth motions to compel that sought discovery of the cost, revenue, and

profitability of HSC's pipeline. Specifically, we direct the trial court to vacate that part of its May 23, 2023 order granting the Hlavinkas' fifth motion to compel and ordering the deposition of HSC's corporate representative on subject matters numbers 2 through 7 and to vacate that part of its May 23, 2023 order granting the Hlavinkas' sixth motion to compel and ordering that HSC produce documents responsive to requests for production numbers 45, 56, and 57. Our writ will issue only if the trial court fails to act. We dismiss any pending motions as moot.

Julie Countiss
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

15